Catherine BARTA, Plaintiff and Respondent,

v.

Frank HONDL, Defendant and Appellant,

and

Frank J. Miller, Defendant and Respondent.

No. 8042.

Supreme Court of North Dakota.

Dec. 27, 1962.

W. Francis Reichert, Dickinson, for plaintiff and respondent Catherine Barta.

Greenwood & Swanson, Dickinson, for defendant and appellant Frank Hondl.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for defendant and respondent Frank J. Miller.

STRUTZ, Judge.

This is an action in which the plaintiff seeks to recover damages alleged to have been suffered by her because of the death of her husband, whose injury and death, she alleges, were proximately caused by the gross negligence of the defendant Hondl and by the ordinary negligence of the defendant Miller. The defendant Hondl denies gross negligence on his part, and alleges that the accident was caused solely by the negligence of the defendant Miller; while the defendant Miller denies any negligence on his part, and alleges that the plaintiff's intestate's injury and death were caused by the negligence of the defendant Hondl, who was engaged in a joint enterprise with the decedent at the time of the accident, and that the plaintiff's intestate was guilty of contributory negligence.

The facts, briefly stated, are as follows:

The plaintiff's intestate and the defendant Hondl were employed as carpenters to help build a barn on a farm some distance southeast of the city of Dickinson. Since they both lived in the city, it was necessary for them to drive to work each day. At the time of the accident, they had been working on the barn construction for about one week. Each morning the defendant Hondl would drive his automobile to the Barta residence where he would park it for the day and then ride to the construction site with the plaintiff's intestate. The defendant Hondl paid nothing for riding with the plaintiff's intestate on any of these occasions.

On the day in question, when the defendant Hondl arrived at the home of the plaintiff's intestate, the latter said to him, "We will take your car today," and placed his tools in the defendant's car. They started for their place of work, traveling south on North Dakota Highway No. 22, with the defendant Hondl doing the driving. The defendant drove at a speed of from fifty-five to sixty miles an hour, except when passing a vehicle going in the same direction.

At a point about eleven miles south of Dickinson, the defendant Hondl came upon the milk truck of the defendant Miller which was proceeding along Highway 22 in the same direction. The defendant Hondl prepared to pass the milk truck, had pulled into the left lane of the highway, and had started to pass, when the defendant Miller made a left turn into a farmyard. The defendant Miller's testimony was that he had turned on his left-turn signal light several hundred feet before starting his turn and before the defendant attempted to pass him. Hondl denies seeing any turn signal by the defendant Miller, but admits that he did not sound his horn be-

fore he started to pass the milk truck. A collision resulted, in which the plaintiff's intestate, riding with the defendant Hondl, was killed.

The action was tried to a jury in the district court of Stark County. The jury dismissed the plaintiff's action against the defendant Miller, but found for the plaintiff in her action against the defendant Hondl. From the judgment for the plaintiff and from the order of the district court denying defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, the defendant Hondl appeals to this court.

The defendant assigns a number of specifications of error, which may be considered under two general headings:

1. Erroneous instruction of the trial court to the jury; and

2. Insufficiency of the evidence to support the verdict of the jury.

The Court submitted the issue of liability of the defendant Hondl to the jury upon two theories: First, upon the theory that the plaintiff's intestate was a guest in the defendant's automobile, in which case the defendant would be liable only for willful misconduct or gross negligence. The second theory upon which the Court submitted this case to the jury was that the plaintiff's intestate was a passenger in the automobile of the defendant Hondl, having paid to the defendant some compensation which was the chief inducement for his transportation and which was understood by both to be and was given and received as compensation for the ride by the plaintiff's intestate. If the jury found the latter situation to be true, then such rider was a passenger and not a guest and the defendant Hondl would be liable for ordinary negligence.

In this regard, the Court instructed the jury:

"Where, however, the driver receives some compensation which is the chief inducement for the rider's transportation and which is understood by both to be, and is given and received as, compensation for the ride, such rider is a passenger, not a guest."

The Court thereafter instructed the jury that if it found plaintiff's intestate was a passenger at the time of the accident, then the defendant would be liable for acts of ordinary negligence.

The only evidence touching on the matter of the relationship of the defendant Hondl and plaintiff's intestate is as follows:

"Q. And how long had you been employed at that job in Lefor prior to June 1st?

"A. About a week, I guess.

"Q. And how did you go out to the job? What manner of transportion?

"A. With the car.

"Q. Who was operating the car generally?

"A. Mr. Barta.

"Q. What was your custom in that respect in going to work in the morning?

"A. We didn't have any custom.

"Q. Well, for example, when you were working on this job near Lefor, on and prior to June 1, you would get up and where would you drive to?

"A. To his place and leave my car there and go in his.

"Q. You would get in Mr. Barta's car?

"A. Yes.

"Q. Were you paying him for transportation?

"A. No.

"Q. There was no payment made at all?

"A. No.

"Q. And every other day that you had been making this trip to Lefor had you been driving with Mr. Barta?

"A. Yes."

Further testimony is as follows:

"Q. You would drive to his home and get into his car and drive down, or he would get into your car and drive down?

"A. Yes.

"Q. On this particular day he put his tools in your car and said, 'We will take your car today'?

"A. Yes.

"Q. You both got into the car and started the trip?

"A. Yes.

"Q. This was about ten after eight in the morning?
"A. Yes."

Again, we read:

"Q. As between you and Mr. Barta, you would each stand your own expenses?

"A. Yes.

"Q. Mr. Barta never charged you for riding with him and you never charged him?

"A. No.

"Q. You had an arrangement whereby one of you would take your car and both would go to this job?

"A. Yes—I don't know if we had an arrangement.

"Q. You don't know if you had an arrangement?

"A. Well, he usually took his car and that day he wanted to take mine, so I took it.

"Q. Whether or not you had an arrangement, that was the practice, wasn't it?

"A. Yes."

At another point in the evidence, we find the following:

"Q. Now, the morning in question, on June 1, as it had been your custom, you got in your car at your home and drove over to Mr. Barta's house?

"A. Yes.

"Q. Do you recall about what time you arrived at his house?

"A. I don't know—about ten after eight or something like that.

"Q. And what transpired then?

"A. Well, he took his tools and switched them into my car. He wanted to take my car.

"Q. And did he get into your car?

"A. Yes.

"Q. You drove?

"A. Yes.

"Q. What kind of car did you have at that time?

"A. '55 Ford.

"Q. And what model?

"A. Hard top—I don't know.

"Q. Was it two-door?

"A. Two-door.

"Q. But it had a back seat and front seat?

"A. Yes.

"Q. So on that morning you called at Mr. Barta's house and he took his

tools out of his car and put them in your car and got in your car with you?

"A. Yes."

And, finally, we read:

"Q. That was the first morning since you and Mr. Barta had been working there on this job in Lefor that you drove your car?

"A. Yes.

"Q. There was no agreement with you that he would drive one day and you the next?

"A. No.

"Q. Did you pay him anything for gasoline?

"A. No.

"Q. He paid you nothing for gasoline?

"A. No."

Nowhere in the record is there any evidence of any contribution or compensation or arrangement which the jury could have found was the "motivating influence for furnishing the transportation."

Thus the trial court permitted the jury to consider the evidence under the erroneous theory that the plaintiff's intestate had entered into an agreement with the defendant Hondl which was the motivating influence for the defendant to furnish to the plaintiff's intestate the transportation in question. The jury rendered a general verdict against the defendant which makes it impossible for this court to determine upon which of the two theories submitted that the verdict was rendered.

■ This court has held that error in instruction as to one theory of a case cannot be held to be harmless if it is impossible to determine upon which of two theories the jury based its verdict, where one theory was not supported by the evidence. Reitman v. Miller, 78 N.D. 1003, 54 N.W.2d 477.

From the entire record in this case, it is impossible for us to say whether the verdict of the jury against the defendant Hondl was based upon the theory that the plaintiff's intestate was a guest of the defendant, which would require a finding of gross negligence on the part of the defendant, or whether the verdict was based upon the finding of ordinary negligence on the part of the defendant, on the theory that plaintiff's intestate was a passenger who had given some compensation which was the chief inducement for furnishing him transportation, but which theory is not supported by any evidence in this case.

■ A general verdict of the jury returned under a proper and an erroneous instruction cannot be upheld. The jury's verdict may have been founded on either of the two theories. If it was founded on the correct theory, the instruction on the erroneous theory would, of course, be harmless. But if the verdict is founded on the erroneous theory, it was clearly error. The general verdict of the jury makes it impossible for us to determine upon which theory the jury's verdict is based. The jury may have founded it upon the issue to which the erroneous instruction related, and that instruction may have been controlling in the jury's determination of the issues of this case.

Therefore, the erroneous submission to the jury of one of several issues is ground for granting a new trial where the jury renders a general verdict and it is impossible for the appellate court to determine upon which of the issues the verdict is based.

There were other specifications of error urged upon this appeal. We do not, however, consider that the questions presented will arise upon a retrial of the case. We do not, therefore, consider them in this opinion.

■ The defendant Hondl also specifies insufficiency of the evidence to sustain the verdict in favor of the defendant Miller, dismissing plaintiff's complaint against Miller. Appellant fails to point out in what

way such evidence is insufficient. Nevertheless, we have reviewed the record and find that there was sufficient evidence to present a question of fact for the jury on this issue. The jury having dismissed the complaint of plaintiff against the defendant Miller, we affirm that portion of the judgment.

Judgment affirmed as to the defendant Miller and reversed and new trial granted as to the defendant Hondl.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.