239 N.W.2d 808 (1976)
FARMERS COOPERATIVE ASSOCIATION OF CHURCHS FERRY, a North Dakota Cooperative Association Corporation, Plaintiff and Appellant,
v.
Elmer COLE, Defendant and Appellee.
Civ. No. 9139.
Supreme Court of North Dakota.
February 25, 1976.
Rehearing Denied April 5, 1976.
*810 Ackre & Britton, Cando, and Neil B. Dieterich, Minneapolis, Minn., for plaintiff and appellant; argued by Neil B. Dieterich.
Traynor & Rutten, Devils Lake, for defendant and appellee; argued by John T. Traynor.
PEDERSON, Judge.
This is an appeal from an order granting a motion for judgment notwithstanding the verdict. We affirm the order, and remand for vacation of the judgment on the verdict and for entry of a judgment of dismissal.
Farmers Cooperative Association of Churchs Ferry is an elevator association engaged in buying and reselling grain. Undisputed facts are that Robert Kringlen, manager of the elevator association, was invited to deal with Elmer Cole by a telephone call from Lyle Leas, a stranger to Kringlen. Leas first asked about the price for durum, then told Kringlen that Cole had 40,000 bushels for sale and gave him Cole's telephone number. Leas was an acquaintance but not an agent of Cole.
Before calling Cole, Kringlen telephoned General Mills at Great Falls and received a bid on 40,000 bushels of No. 1 hard amber durum at $4.35 per bushel. At about 7 a. m. on July 25, 1973, Kringlen telephoned Cole at his home at Sarles and offered to buy 40,000 bushels at $4.18 per bushel.
At this point the parties disagree as to what happened. Kringlen claims that they orally agreed to the sale and purchase of 40,000 bushels of No. 1 hard amber durum at $4.18 per bushel for delivery from August to December 1973. Kringlen further claims to have told Cole that he was going to resell the grain, and that he would write up the contract and sign it. Kringlen testified that Cole agreed to stop at Churchs Ferry and sign the contract in two or three days.
Cole, contrarily, alleges that he only agreed to consider the written contract after it was delivered or mailed to him and that when the contract was neither delivered nor mailed to him, no contract resulted.
Kringlen and Cole never met until the case was being tried. There had been no previous dealings between them, and Sarles, being over 60 miles from Churchs Ferry, would not be considered as part of the Churchs Ferry local trade area.
After the July 25th telephone conversation, Kringlen again called General Mills and confirmed a resale to it of 40,000 bushels of No. 1 hard amber durum. Kringlen also drew up a contract in writing covering the purchase from Cole, which he signed and retained in his file. Several days thereafter the confirmed sale to General Mills was reduced to writing and signed by General Mills and Kringlen.
*811 Cole did not stop at Churchs Ferry and Kringlen did not deliver or mail the written contract to Cole for signature. On July 30th Kringlen called the Cole residence and asked about early delivery. Mr. Cole was not at home and Mrs. Cole indicated to Kringlen that she was upset about the matter. On August 1st Kringlen called again and spoke to Mr. Cole, who did not give any answer about delivery but, according to Kringlen's testimony, agreed to stop by and talk about the deal. On this point Cole disagrees, claiming that he told Kringlen specifically that there was no contract and he would not deliver.
The next contact between the parties occurred on August 28th when Kringlen said he called to ask why Cole hadn't stopped at Churchs Ferry to sign the contract. Kringlen claims that during this conversation Cole repudiated his oral contract. Cole alleges that his comments were that there was no contract between the parties.
The elevator association, claiming to have then purchased 40,000 bushels at a cost of $6.66 per bushel to fulfill its contract with General Mills, sued Cole for damages of $122,800 for breach of an oral contract. Cole denied the existence of a contract but alleged that if there was an oral contract, it was unenforceable under § 41-02-08, NDCC (2-201, UCC), because contracts for the sale of goods for $500 or more must be in writing. The elevator association responded to this allegation by claiming that estoppel prevents Cole from relying on § 41-02-08, NDCC (Statute of Frauds).
Before trial Cole moved for summary judgment, which was denied. During trial, at the end of plaintiff's case and at the end of the trial, Cole moved for a directed verdict, both of which were also denied. The jury returned a verdict for the elevator association in the amount of $89,500. Within the time provided in Rule 50(b), N.D.R. Civ.P., Cole moved for judgment notwithstanding the verdict or for a new trial. The trial court granted Cole's motion for judgment notwithstanding the verdict and directed the clerk to enter a judgment of dismissal.
We find nothing in the record that specifically vacates the judgment on the verdict nor do we find that judgment was ever entered pursuant to the order for judgment notwithstanding the verdict. Farmers Cooperative Association appealed from the order granting the motion for judgment notwithstanding the verdict.
First of all, an order for judgment is not appealable but may be reviewed when there is an appeal from the judgment. See § 28-27-02, NDCC, and Gebeke v. Arthur Mercantile Company, 138 N.W.2d 796 (N.D.1965), syllabus 1. Since this has not been argued by anyone in this case and since the merits have been extensively researched, briefed and argued, and in order to expedite a case which is of pressing concern to the litigants, this court will decide the case on its merits now rather than remanding for technical corrections which should have been made before appealing to this court. See Kittelson v. Havener, 239 N.W.2d 803 (N.D.1976).
Secondly, where motions for judgment notwithstanding the verdict are based upon insufficiency of the evidence, without weighing the credibility of the witnesses, the evidence will be construed most favorably to the party against whom such judgment is sought. See Nokota Feeds, Inc. v. State Bank of Lakota, 210 N.W.2d 182 (N.D.1973); Kunze v. Stang, 191 N.W.2d 526 (N.D.1971); Chicago, M., St. P. & P. R. Co. v. Johnston's Fuel Liners, 130 N.W.2d 154 (N.D.1964), and 122 N.W.2d 140 (N.D. 1963).
Construing the evidence most favorably to the elevator association, we find no evidence upon which the jury could have found fraud, positive misrepresentation, or unconscionable conduct akin to fraud chargeable to Elmer Cole. The trial court reached the same conclusion and, relying upon Williston on Contracts, Third Edition, § 533A, held that such proof was necessary *812 before Cole would be estopped from raising the Statute of Frauds as a defense, and that estoppel to assert the Statute of Frauds does not arise merely because an oral contract within the statute has been acted upon by the promisee and not performed by the promisor, nor does it arise upon the mere refusal to make a writing as agreed.
Quoting at length from the Illinois case involving an oral contract for the sale of corn, Ozier v. Haines, 411 Ill. 160, 103 N.E.2d 485, 488 (1952), the trial court stated:
"It is true that harsh results * * * may occur where one has changed his position in reliance on the oral promise of another, but it is a result which is invited and risked when the agreement is not reduced to writing in the manner prescribed by law. * * *
"* * * In the absence of fraud or misrepresentation, the party changing his position must be said to have acted solely upon his own judgment and at his own risk, and he is not entitled to an application of the estoppel doctrine."
The trial court distinguished what it felt was the most persuasive case for the elevator, Oxley v. Ralston Purina, 349 F.2d 328 (6th Cir. 1965).
The Statute of Frauds is intended to prevent frauds and perjuries, and it has often been said that courts ought not to allow the Statute of Frauds to be used as an instrument to accomplish fraud. See 73 Am. Jur.2d, Statute of Frauds, §§ 564, 565. Estoppel in this State is limited for some purposes by a statute which provides:
"When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission." Section 31-11-06, NDCC.
If the principle of estoppel is applied too broadly it would accomplish a complete derogation of the Statute of Frauds and estoppel can then become the tool to accomplish the fraud. Conversely, too narrow an application of the principle of estoppel can permit the Statute of Frauds to be the tool to accomplish the fraud.[1]
Our examination of estoppel cases which we have heretofore decided leads us to certain conclusions. Insofar as real estate titles are concerned, the elements of estoppel have been expressed often and as recently as Cranston v. Winters, 238 N.W.2d 647 (N.D.1976), where we quoted with approval from Boggs v. Merced Mining Co., 14 Cal. 279, at 367-368:
"first, that the party making the admission by his declaration or conduct was apprised of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; third, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge; and, fourth, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved."
Quite obviously this recitation of the elements of estoppel cannot be explicitly applied to circumstances such as confront us in this case, where we are concerned not with land titles but with sales of goods under the Uniform Commercial Code as adopted by this State. In two recent cases, Nelson v. Glasoe, 231 N.W.2d 766 (N.D. 1975), and Dangerfield v. Markel, 222 N.W.2d 373 (N.D.1974), we recognized that estoppel could be a bar to the raising of the defense of the Statute of Frauds, but expressed *813 no statement of the elements applicable.
Section 41-02-08, NDCC (2-201, UCC), is the applicable Statute of Frauds' provision. Section 41-01-03, NDCC (1-103, UCC), allows the principle of estoppel to supplement the Code provisions. Section 31-11-06, NDCC, is a statutory restatement of the equitable principle of estoppel.
Our search for an expression of the elements of estoppel readily applicable to non-real estate matters leads us to an annotation in 56 A.L.R.3d 1041, where we find the following:
"Based as it is upon a consideration of the facts in light of equitable considerations, public policy, fair dealing, and the like, the basic elements of an equitable estoppel, insofar as it relates to the person being estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the other party or persons; and (3) knowledge, actual or constructive, of the real facts. Insofar as related to the party claiming the estoppel, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice."
These elements do not materially differ from those expressed in 3 Pomeroy's Equity Jurisprudence (5th ed.), § 805.
We believe that this statement is consistent with our statute (§ 31-11-06, NDCC) and with the principles we have followed in matters involving real estate titles, as well as other situations where we have applied estoppel. See Cranston v. Winters, supra; Union National Bank in Minot v. Schimke, 210 N.W.2d 176 (N.D.1973); Rath v. Armour and Company, 136 N.W.2d 142 (N.D. 1965); Grand Forks County v. City of Grand Forks, 123 N.W.2d 42 (N.D.1963).
The annotation in 56 A.L.R.3d 1044 points out another matter which should enter into a determination of the application of estoppel to transactions under the Uniform Commercial Code, and we quote:
"The particular statute of frauds in question, and cases construing relevant portions thereof, should be carefully examined to determine if the particular promise relied upon might fall within an exception to the operation of the statute, thus possibly negating the necessity of relying on promissory estoppel. Indeed, at least one statute of frauds has been construed as excepting from its operation any promise to which promissory estoppel would be applicable. The statute of frauds requirements may vary as to the nature of the agreements involved, and a close examination of the subject matter of the oral promise in question is therefore warranted. For example, if the oral promise in question concerned the sale of goods, the attorney would want to be aware of the requirements set out in UCC § 2-201(3) which states the circumstances under which a contract for the sale of goods may be enforceable notwithstanding the statute of frauds. * * * It should be pointed out that where there exists, in statute or in case law, clearly established means under which a contract dealing with a particular subject matter may be rendered enforceable notwithstanding the statute of frauds, the courts may be hesitant to apply promissory estoppel in such a manner as to enlarge upon those means of avoiding the statute."
We, accordingly, make a careful examination of the provisions of § 41-02-08, NDCC (2-201, UCC), to determine to what extent *814 the Legislature intended to permit avoidance of the Statute of Frauds. First of all, we find a special exception for transactions between merchants in the following language:
"2. Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection 1 against such party unless written notice of objection to its contents is given within ten days after it is received." Section 41-02-08, NDCC.
In this case the elevator association does not maintain that Cole is a merchant, even though that could have been argued under the theory of Sierens v. Clausen, 60 Ill.2d 585, 328 N.E.2d 559 (1975), and Continental Grain Company v. Harbach, 400 F.Supp. 695 (N.D.Ill.1975). We therefore must conclude that the transaction between the elevator association and Cole is a transaction between a merchant and a non-merchant and that § 41-02-08(2), NDCC, does not apply.
If Cole had been a merchant we see no possibility that we could have permitted, under the facts of this case, the principle of estoppel to enlarge the exemption in subsection 2 to the point where no memorandum need be mailed to him and the ten-day period permitted for his objection be abolished. It would be an unconscionable discrimination to allow the principle of estoppel to impose upon a non-merchant a standard far beyond that imposed upon a merchant, which we would do if we were to relieve the elevator association of any obligation to mail Cole a memorandum and deprive him of the ten-day period in which to object.
The other exemptions specified in § 41-02-08, NDCC, are:
"3. A contract which does not satisfy the requirements of subsection 1 but which is valid in other respects is enforceable
"a. if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or
"b. if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or
"c. with respect to goods for which payment has been made and accepted or which have been received and accepted (section 41-02-69)."
From the record we have determined that none of these exemptions apply.
We similarly concluded in Dangerfield that exceptions to the Statute of Frauds cannot be enlarged by usage in the trade, such as a consistent failure of grain dealers to utilize written agreements in their dealings with farmers.
As we indicated in Ray Farmers Union Elevator Co. v. Weyrauch, 238 N.W.2d 47 (N.D.1976), courts are more receptive to pleas of unconscionability raised by consumers (non-merchants) than those raised by merchants.
We accordingly conclude that the trial court was correct in ruling that there was no evidence of fraudulent action on the part of Elmer Cole, and that the elevator association had not established the application of estoppel prohibiting Cole from relying on the Statute of Frauds.
Although each case must be evaluated by its circumstances when determining whether injustices are prevented or allowed by applying the Statute of Frauds or applying estoppel to prevent one from applying the Statute of Frauds, we believe that the conclusion *815 reached accomplishes justice and is compatible with the recent cases from our Minnesota neighborsSacred Heart Farmers Co-op. Elevator v. Johnson, Minn., 232 N.W.2d 921 (1975), and Del Hayes & Sons, Inc. v. Mitchell, Minn., 230 N.W.2d 588 (1975).
We affirm the order granting the motion for judgment notwithstanding the verdict and remand for vacation of the judgment on the verdict and the entry of a judgment of dismissal.
ERICKSTAD, P. J., and SAND, VOGEL and PAULSON, JJ., concur.
NOTES
[1] See note in Michigan L.Rev. 170 (Nov. 1967) for description of confusion existing in the application of these two principles.