Linda JOHNSON, Plaintiff and Appellee,

v.

NORTHWESTERN BELL TELEPHONE
COMPANY, Defendant and Appellant.

Civ. No. 10425.

Supreme Court of North Dakota.

Sept. 29, 1983.

Wickham Corwin [argued], of Conmy, Feste, Bossart, Hubbard & Corwin, Fargo, for defendant and appellant.

Rauleigh D. Robinson [argued], of Vogel Law Firm, Mandan, for plaintiff and appellee.

PAULSON, Surrogate Justice.*

This is an appeal by Northwestern Bell Telephone Company [Bell] from a judgment entered upon a jury verdict in favor of Linda Johnson [Johnson] and from a denial of Bell's alternative motions for judgment

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section

notwithstanding the verdict or for a new trial. Judgment affirmed in part, reversed in part, and order denying judgment notwithstanding the verdict or for a new trial affirmed.

Johnson was an employee of Bell from 1974 until the events complained of in this action. In 1979, while an employee of Bell, Johnson became pregnant. As a result of this pregnancy and the subsequent birth of her child, Johnson applied for and received a variety of leaves from her employment, culminating with an extension of her leave of absence for the care of newborn children. Prior to deciding to apply for the final extension of her child care leave, Johnson consulted documents provided by her employer which purported to summarize the child care leave and job reinstatement provisions of the contract negotiated between her union, Communication Workers of America [CWA] and Bell. Johnson also referred to the leave application forms provided by Bell and spoke with Rosemary Glaspell [Glaspell], a Bell supervisor, before extending her child care leave. Approximately seven months after the birth of her child, Johnson notified Bell that she was ready to return to work and accordingly applied for reinstatement. She was subsequently advised, however, that no appropriate positions were available. Johnson then commenced this action against Bell.

Prior to trial, Johnson relied on three separate theories of liability:

1. Under the terms of the agreement between Bell and her union, Johnson was entitled to receive a maximum of 12 months of child care leave, with guaranteed job reinstatement at any point during that 12 months. Bell breached the terms of this agreement by failing to reinstate Johnson when she applied for reinstatement in August of 1980.

2. Through the terms of various Bell publications and through the oral representations of one of its supervisors,

27–17–03, N.D.C.C.

Bell misrepresented the terms of the child care leave program by assuring Johnson that she was entitled to a maximum of 12 months of leave with guaranteed job reinstatement at any point during that 12 month period. Bell should thereby be estopped from asserting the terms of the union agreement which in fact limited Johnson's period of guaranteed reinstatement to six months from the date of delivery.

3. Bell was contractually bound to make a "reasonable effort" to reinstate employees requesting to return from child care leave more than 6 months but less than 12 months from the date of delivery. Bell did not make a reasonable effort to reinstate Johnson.

Prior to commencement of trial, Bell sought summary judgment on the first (contract) and second (estoppel) liability theories. The trial court ruled that Johnson's contractual rights, including reinstatement rights, were governed by the terms of the agreement negotiated between Bell and CWA. The trial court concluded that the contract was clear and unambiguous and that, by its terms, Bell employees returning from child care leave were guaranteed reinstatement only during the initial six months following delivery of their babies. Accordingly, the trial court ordered judgment for Bell on the contractual liability theory. Bell's motion for summary judgment on the estoppel theory, however, was denied and the remaining two theories were tried to a jury.

The jury returned a general verdict in favor of Johnson. She was awarded compensatory damages of $45,000 and punitive damages of $15,000. Following the jury's verdict Bell filed alternative motions for judgment notwithstanding the verdict or a new trial. The judge denied Bell's motions and this appeal followed.

Bell presents the following issues for our determination on appeal:

1. Does the documentary evidence which Johnson relied on to establish her estoppel claim entitle Bell to judgment in its favor on that issue as a matter of law?

2. Was the evidence sufficient to support the jury's verdict on either liability theory?

3. Does a determination that either or both of the alternative liability theories were erroneously submitted to the jury mandate reversal?

4. Is there a basis for the jury's award of punitive damages?

5. Did the trial court commit prejudicial error in certain of its evidentiary rulings?

We will discuss these issues in the order listed.

I

Bell contends, because written documents such as the summary pamphlets and leave application forms constitute the basis of Johnson's estoppel claim, that the claim should have been resolved as a matter of law. Bell also argues that it was entitled to judgment on the estoppel issue as a matter of law because the evidence presented in support of that theory was insufficient to present a question of fact for the jury. Bell points in particular to two elements of equitable estoppel which, in its view, Johnson failed to prove.

Section 31–11–06 of the North Dakota Century Code is North Dakota's statutory restatement of the principle of equitable estoppel. *Cranston v. Winters,* 238 N.W.2d 647, 652 (N.D.1976). Section 31–11–06, N.D.C.C., provides that:

"When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission."

In *Farmers Cooperative Association of Churchs Ferry v. Cole,* 239 N.W.2d 808 (N.D.1976), we set forth the elements of an estoppel applicable to non-real estate matters such as that before us here:

"Based as it is upon a consideration of the facts in light of public policy, fair dealing, and the like, the basic elements of an equitable estoppel, insofar as it relates to the person being estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by or will influence, the other party or persons; and (3) knowledge, actual or constructive, of the real facts. Insofar as related to the party claiming the estoppel, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice."

*Id.* at 813. We have held this statement to be consistent with our statute and the principles contained therein. *Id.*

■ The burden of proving each element of an estoppel is on the party asserting it. *Aune v. City of Mandan,* 167 N.W.2d 754, 759 (N.D.1969). Bell argues that Johnson has failed to prove: (1) that Bell made false or misleading representations; and (2) that Johnson lacked the means of knowledge of the truth regarding her reinstatement rights.

■ This court's review of questions of fact is limited to consideration of whether or not there is substantial evidence to sustain the jury's verdict. In reviewing the evidence, we view it in the light most favorable to the verdict. *Powers v. Martinson,* 313 N.W.2d 720, 728 (N.D.1981). In so doing, however, we note that unless clearly warranted by the facts of the case, estoppel is not favored. *Knauss v. Miles Homes, Inc.,* 173 N.W.2d 896, 905 (N.D.1970).

We turn first to the question of whether there is substantial evidence which, when viewed in the light most favorable to Johnson, would support the jury's verdict. Bell points to the undisputed fact that Johnson had access to a copy of the memorandum of understanding which set forth her reinstatement rights; that the trial court found this contract to be clear and unambiguous and guaranteed reinstatement only during the first six months following delivery; that at no time prior to applying for the extension to her leave of absence for care of newborn children did she approach a Bell management person and ask, point blank, what her reinstatement rights were. Bell argues that she, instead, relied on her own inferences from the summaries, the leave application forms, and the statements of Glaspell. We find it significant that none of the documents relied upon by Johnson specifically guarantee her a position of lesser status if she should apply for reinstatement more than six months after delivery of her child. Glaspell's statements to Johnson in regard to the consequences of staying on leave longer than six months do, however, contain a logical implication that Johnson was risking only her status, not her employment, if she were to do so. The documents referred to by Johnson, when read in light of Glaspell's statements, might also be determined to contain the logical implication that she would be reinstated after six months, although to a position of lesser status. It should also be noted that Johnson was referred to Glaspell by her supervisor because Glaspell "was usually up on these things".

■ In 31 C.J.S. *Estoppel* § 71, it is said that "[o]ne relying on an estoppel must have exercised such reasonable diligence to acquire knowledge of the real facts as the circumstances of the case require. If he conducts himself with a careless indifference to means of information reasonably at hand or ignores highly suspicious circumstances which should warn him of danger or loss he cannot invoke the doctrine of estoppel." In *Sittner v. Mistelski,* 140 N.W.2d 360 (N.D.1966), we stated that the doctrine of equitable estoppel "is essentially one of good conscience, and does not permit a liti-

gant to assert that he was misled by another's error when the real facts were open for his convenient ascertainment." *Id.* at 367. The question of fact for the jury was whether Johnson had "knowledge or the means of knowledge of the truth as to the facts in question". Johnson offered no evidence whatever that she did not have "convenient access" to the truth. She, in fact, admitted in her testimony that she never posed the question of her reinstatement rights directly to Bell management, including Glaspell, and that she did not contact her union representative until after the six-month period had expired. Johnson cannot therefore invoke the doctrine of estoppel in this instance.

In view of our conclusion above, we need not discuss Bell's other contentions relative to the estoppel theory of liability.

## II

Bell further argues that the evidence is insufficient to sustain a jury verdict in favor of Johnson on the issue of Bell's alleged breach of duty to use "reasonable effort" to reinstate Johnson.

██ Whether Bell did exert "reasonable effort" is clearly a question of fact for the jury. As we have already noted, our "review of questions of fact is limited to consideration of whether or not there is substantial evidence to sustain the jury verdict". *Powers v. Martinson, supra* 313 N.W.2d at 728. We will view that evidence in the light most favorable to the verdict. *Id.* Viewed in this light, the jury might well have concluded not only that Bell's efforts to find another position for Johnson were unreasonable, but that Bell willfully refused to reemploy her. Evidence was presented to the jury that it was Bell's policy not to fill the positions of persons in Johnson's category while they were on guaranteed status, *i.e.,* within six months of delivery. In Johnson's case, however, Bell had filled her position long before her guaranteed reinstatement status had terminated. In addition, the evidence indicated that what effort Bell did make in reinstating her was strictly limited to the Fargo-Moorhead

area. The jury might well have determined that such a limited effort was unreasonable under the circumstances. The only position which Bell presented to Johnson was as a typist. Evidence indicated that Bell knew in advance that Johnson was unqualified for that position. When Johnson confirmed this the offer was immediately withdrawn without affording Johnson an opportunity to become qualified. Under the facts and circumstances of the case a determination that Bell failed to make a "reasonable effort" to reinstate Johnson was supported by substantial evidence and we therefore do not disturb the jury's verdict.

## III

Because the jury returned a general verdict for Johnson we are now faced with the question of whether or not this case must be remanded for a new trial in view of our conclusion that Johnson's estoppel theory was not supported by substantial evidence but Bell's breach of duty to use reasonable effort to reinstate Johnson was so supported.

Bell contends that because one of the alternative theories of liability fails, a new trial must be granted. In support of its argument, Bell cites *Powers v. Martinson,* 313 N.W.2d 720, 724 (N.D.1981), wherein we quoted from our opinion in *Barta v. Hondl,* 118 N.W.2d 732, 736 (N.D.1962);

> "... the erroneous submission to the jury of one of several issues is ground for granting a new trial where the jury renders a general verdict and it is impossible for the appellate court to determine upon which of the issues the verdict is based."

██ In this case the jury awarded Johnson punitive damages. The judge instructed the jury that it could not award punitive damages unless it found that Bell had acted with oppression, fraud, or malice. We do not, at this time, pass upon the propriety of the instruction in this case. Upon reviewing the evidence and testimony, however, we note that virtually all evidence of "oppression, fraud, or malice", was directed toward Bell's failure to use reasonable ef-

fort to reinstate Johnson. There was no evidence of malice on the part of Glaspell presented to the jury. We are therefore able to determine that the jury decided this case on the theory that Bell failed to use reasonable effort to reinstate Johnson. Consequently, we need not remand for a new trial.

### IV

Bell's fourth contention is that punitive damages are not authorized by statute in cases of this kind or, in the alternative, that they were not proved.

■ Section 32–03–07, N.D.C.C., sets forth those instances when a jury may award punitive or exemplary damages:

> "In any action for the breach of an obligation not arising from contract, when the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the court or jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant."

Bell contends that this is a breach of contract action and that Bell's obligation to make "reasonable effort" arises from contract, not from law. We agree. Bell was under no obligation to use reasonable effort to reinstate Johnson apart from its contractual obligation. Johnson is therefore not entitled to punitive damages.[1]

### V

■ Bell's final contention is that the judge committed prejudicial error in admit-

1. It is argued by appellee that our opinion in *Vallejo v. Jamestown College*, 244 N.W.2d 753, 758 (N.D.1976), provides authority for the award of punitive damages upon proof of "malice wantonness, or oppression", Johnson then cites *Corwin Chrysler-Plymouth v. Westchester Fire Insurance Company*, 279 N.W.2d 638, 645 (N.D.1979), for further support, in which case we said that:

> "Here, the underlying controversy arises from an insurance contract. 'Generally, damages for breach of contract are limited to the pecuniary loss sustained. Exemplary damages are not recoverable in an action for breach of contract unless the breach amounts to an independent, willful tort, in which event

ting testimony concerning alleged sexual harassment of Johnson by one of her supervisors and testimony alleging that Bell exerted pressure on its employees concerning their testimony at trial. Johnson offered this testimony in support of her claim for punitive damages. Although we have determined that punitive damages cannot be recovered in this action, it does not necessarily follow that the admission of such testimony was improper. The testimony objected to by Bell was relevant to the issue of whether Bell had made "reasonable effort" to reinstate Johnson. The testimony also went to the credibility of Bell's witnesses, and was therefore admissible.

■ A party cannot assign as error that which is not prejudicial to him. *Powers v. Martinson*, 313 N.W.2d 720, 724 (N.D. 1981); *Holten v. Amsden*, 161 N.W.2d 478, 485 (N.D.1968). We do not find that Bell was prejudiced in any way by the trial court's evidentiary rulings. There was sufficient evidence before the jury to return a verdict for Johnson, even without the testimony to which Bell objects.

We affirm the judgment as to compensatory damages and reverse as to punitive damages, and affirm the order denying judgment notwithstanding the verdict or in the alternative for a new trial.

ERICKSTAD, C.J., and SAND and VANDE WALLE, JJ., concur.

PEDERSON, Justice, dissenting.

Without attacking the sanctity of jury trials, I think that a new trial is required in

exemplary damages may be recovered under proper allegations of malice, wantonness, or oppression.' *Vallejo v. Jamestown College*, 244 N.W.2d 753, 758 (N.D.1976). *The insurer's duty to act in good faith, however, emanates not from the terms of the insurance contract but from an obligation 'imposed by the law*, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities.'" [Emphasis added.]

In the instant case Johnson has neither alleged nor proved breach of any obligation save that imposed by the employment contract. She is therefore not entitled to punitive damages.

this case to assure substantial justice. If Johnson's only claim was that Bell's efforts to reinstate her were not reasonable, a recovery of $45,000 would not have been warranted. I agree with Surrogate Justice Paulson's comments on the estoppel issue and on the question of punitive damages. In that light, the failure to award a new trial becomes an abuse of discretion.