ST. JOHN PUBLIC SCHOOL DISTRICT
NO. 3, a Public Corporation,
Plaintiff and Appellee,

v.

ENGINEERS–ARCHITECTS, P.C., a
Professional Corporation, De-
fendant and Appellant,

and

Thomas F. Keegan, d/b/a Keegan Broth-
ers & Keegan Plumbing, Heating and
Air Conditioning, Defendant and Ap-
pellee.

Civ. No. 870027.

Supreme Court of North Dakota.

Oct. 20, 1987.

Dean F. Bard, Bismarck, for plaintiff and appellee.

McConn, Fisher, Olson & Daley, Grand Forks, for defendant and appellant; argued by Patrick W. Fisher.

Arne F. Boyum, Jr., Rolla, for defendant and appellee.

ERICKSTAD, Chief Justice.

Engineers–Architects, P.C. (EAPC), has appealed from a district court judgment holding it jointly and severally liable with Thomas F. Keegan, d/b/a Keegan Brothers & Keegan Plumbing, Heating and Air Conditioning (Keegan),[1] for damages to St. John Public School District No. 3, a Public Corporation (St. John), in St. John's suit alleging Keegan's faulty and unworkmanlike installation of a coal-fired boiler and EAPC's failure to properly supervise the work performed by Keegan. We reverse in part.

---

1. Keegan did not appeal.

St. John decided to install a new boiler in 1978 and contacted Keegan about it. Keegan engaged EAPC to prepare plans and specifications for the project. Keegan was to pay EAPC for its engineering services and Keegan was to be reimbursed by St. John. St. John let bids on the basis of the plans and specifications prepared by EAPC. The contract was awarded to Keegan. Keegan and St. John executed a "form of agreement" contained in the documents comprising the plans and specifications prepared by EAPC. EAPC, which was not engaged by St. John, did no work on the project beyond preparing the plans and specifications, and was never requested to provide inspection or supervisory services.

Keegan installed the boiler without inspection by EAPC. St. John twice made partial payments to Keegan upon Keegan's requests, which were submitted on "contractor request for payment" forms prepared by EAPC. The forms contained spaces for certification by EAPC that Keegan was entitled to the payments requested, but the forms were executed only by Keegan and thus contained no certifications by EAPC. St. John also paid Keegan's final bill, which was submitted on Keegan's own document. Although EAPC billed Keegan for its services, EAPC was paid with a check issued by St. John on November 20, 1979.

In February of 1984, St. John sued Keegan and EAPC, alleging faulty and unworkmanlike installation of the boiler by Keegan and a failure by EAPC to properly supervise the installation of the boiler. The trial court found that Keegan did not install the boiler in accordance with the plans and specifications prepared by EAPC and concluded that Keegan breached the contract with St. John. As to EAPC, the trial court found:

"5. That Engineers–Architects in preparing the plans and specifications for the boiler project, and through their involvement in the project, purported to represent St. John in the supervision of Keegan, but failed to properly supervise the work that was performed by Keegan."

In its conclusions of law, the court determined:

"2. That Engineers–Architects, by failing to properly supervise Keegan's work, breached a duty of responsibility to St. John. There was no express contract between Engineers–Architects and St. John, but Engineers–Architects is estopped in equity to deny the existence of an implied contract due to the representations made in the contract plans and specifications. Further evidence of an implied contract is shown by the fact that forms for payments to the contractor and for the filing of shop drawings contained a space for approval by Engineers–Architects. Further evidence of the contractual relationship between St. John and Engineers–Architects is the fact that Engineers–Architects was paid directly by St. John for the services rendered."

The dispositive issue on appeal is whether or not the trial court erred in determining either that EAPC was estopped in equity to deny the existence of an implied contract with St. John to supervise Keegan's installation of the boiler or that there was such an implied contract.

■ Estoppel is not favored and the burden of proving each element of an estoppel is on the party asserting it. *Johnson v. Northwestern Bell Tel. Co.*, 338 N.W.2d 622 (N.D.1983). One of the elements that must be established by a party asserting an equitable estoppel is "reliance, in good faith, upon the conduct or statements of the party to be estopped." Syllabus ¶ 4, *Farmers Cooperative Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808 (N.D.1976). *See also Kouba v. Great Plains Pelleting, Inc.*, 372 N.W.2d 884 (N.D.1985); *Blocker Drilling Canada, Ltd. v. Conrad*, 354 N.W.2d 912 (N.D.1984).

■ There is no evidence in the record before us of any reliance by St. John upon any conduct or statements of EAPC or upon any representations made in the contract plans and specifications prepared by EAPC that EAPC would supervise Keegan's installation of the boiler. Thus, St. John failed to meet its burden of proving an essential element of equitable estoppel.

The trial court, therefore, erred in concluding that EAPC was estopped in equity to deny the existence of an implied contract with St. John to supervise Keegan's installation of the boiler.

Although it is not clear from the language used in the findings of fact and conclusions of law, it appears that the trial court may have imposed liability upon EAPC on the basis of an implied contract, as distinguished from an estoppel to deny the existence of an implied contract.

The existence and terms of an implied contract are manifested by conduct. Section 9-06-01, N.D.C.C. "The law recognizes two classes of implied contracts: contracts implied in fact and contracts implied in law, more commonly referred to as quasi or constructive contracts." *Jerry Harmon Motors, Inc. v. Heth,* 316 N.W.2d 324, 327 (N.D.1982). "When dealing with contracts implied in fact the court is required to determine from the surrounding circumstances what the parties actually intended." *Id.,* at 327. "Quasi contracts impose an obligation for reasons of justice and are founded upon principles of unjust enrichment." *Id.,* at 328.

There has been no assertion of unjust enrichment. Thus there is no quasi contract or contract implied in law under which to impose liability upon EAPC. Any liability upon EAPC must, therefore, rest upon a contract implied in fact. "Contracts implied in fact are based on the mutual intentions of the parties. The court must determine from the surrounding facts and circumstances whether the parties actually intended to enter into a contract." *Beck v. Lind,* 235 N.W.2d 239, 250 (N.D.1975).

Raymond E. Engen, a principal of EAPC, testified that, before preparing the plans and specifications, he offered inspection services to Superintendent Rintala but that Rintala did not hire him to do inspection. EAPC did not perform inspection services. EAPC was not asked at any time to provide inspection services. St. John paid Keegan without any certification by EAPC that Keegan was entitled to receive the payments requested. There was no evidence that any language in the plans and specifi-

cations led St. John officials to believe that EAPC was obligated to provide inspection services. The only member of the St. John school board to testify at trial testified that he did not "look through" the plans and specifications before St. John advertised for bids. Based upon our review of the evidence we are convinced a mistake was made and irrespective of whether or not a contract exists to provide plans and specifications there was no contract which would have included inspection services.

For the reasons stated, the judgment is reversed insofar as it imposes liability upon EAPC.

GIERKE, VANDE WALLE and LEVINE, JJ., concur.

MESCHKE, Justice, concurring and dissenting.

I agree with the Chief Justice that there was no evidence to support equitable estoppel. There was, however, sufficient evidence for the trial court to determine, as it apparently did, that there was a contract manifested by conduct and implied in fact between Engineers–Architects, P.C. (EAPC) and St. John. I am not definitely and firmly convinced that there was insufficient evidence to support the clumsy finding that EAPC "purported to represent St. John in the supervision of Keegan, but failed to properly supervise the work that was performed by Keegan." Therefore, I dissent from reversal of the judgment against EAPC.

NDRCivP 52(a) says: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Normally, this court does not weigh the relative importance of conflicting items of evidence:

"A finding is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. [Citations omitted.] That we may have viewed the facts differently if we had been the initial trier of the case

does not entitle us to reverse the lower court. [Citations omitted.] Our function is not to decide factual issues de novo." *Byron v. Gerring Industries, Inc.*, 328 N.W.2d 819, 821 (N.D.1982).

The Chief Justice correctly observes that Raymond E. Engen of EAPC testified that St. John's Superintendent Rintala declined to hire him to do inspections. But the trial court was free to disbelieve this self-serving testimony in judging Engen's credibility in the light of other evidence. And, EAPC claims that St. John was billed for services on an hourly basis which did not contain any billed hours for inspections. However, one billing showed, without explanation, several hundred dollars in services billed during the time that Keegan was performing the work.

While dealings were informal and haphazard, it was plain that EAPC prepared the plans and specifications for St. John, and that EAPC was paid directly by St. John for doing so. EAPC was clearly identified to bidders as "Consulting Engineer" for the project and as having prepared the plans. The plans and specifications prepared by EAPC contained numerous references to inspections by the engineer in the course of performance by the contractor. Article 2, section 2.2.15 (as changed by Article 16) said: "The [Engineer] will conduct inspections to determine the Dates of Substantial Completion and final completion and will issue a final Certificate for Payment." Article 16.20 provided for a "Final Observation" and "a follow-up visit to the Project" by the "Engineer." This documentary evidence was inconsistent with Engen's testimony that he had earlier been told by the school superintendent not to do inspections.

EAPC could easily have deleted inconsistent provisions, qualified them by a specific addendum to the plans and specifications, or otherwise advised St. John in writing that no inspections were planned. Since the plans and specifications prepared by EAPC said inspections would be done, an agreement to inspect and supervise was inferable from the specification documents.

Furthermore, Ray Engen of EAPC was at the boiler site after the work was completed, met with the school board, and corresponded with the manufacturer of the boiler on behalf of St. John before EAPC was paid by St. John (I Appendix 25–28). And, the trial court was entitled to weigh EAPC's cozy relationship with Keegan, "the successful bidder," who arranged for EAPC to prepare the plans and specifications for St. John.

While the evidence about EAPC's obligation to inspect and supervise was not whelming, it was enough. Since I am not definitely and firmly convinced that a mistake was made, I would affirm the trial court's findings and uphold the judgment.