Orbadella FETCH, Plaintiff and
Respondent,

v.

James BUEHNER, Defendant and
Appellant.

Civ. No. 8832.

Supreme Court of North Dakota.

Aug. 30, 1972.

C. J. Schauss, Mandan, for defendant and appellant.

Pringle & Herigstad, Minot, for plaintiff and respondent.

PAULSON, Judge.

The defendant, James Buehner, has appealed from a judgment of the District Court of Ward County which adjudged him to be the father of Deberlee Aynn Fetch, a child born out of wedlock to the plaintiff, Orbadella Fetch, and which judgment ordered him to make support payments. A trial de novo was demanded.

Deberlee was born on February 8, 1963, and this action was commenced on August 18, 1967. Buehner has pleaded and urged that this action is barred by the limitation of § 32–36–09 of the North Dakota Century Code, which provides:

> *"Time of bringing action to determine paternity of child.*—Proceedings to enforce the obligation of the father of a child born out of wedlock shall be subject to the following limitations:
>
> "1. May be instituted during the pregnancy of the mother or after the birth of the child;
>
> "2. Shall not be brought after the lapse of more than two years from the birth of the child, unless paternity has been judicially established, or has been acknowledged by the father in writing."

■ Whether or not the action by Orbadella Fetch is barred is a question of first impression in this court. After an examination of the applicable law, we are of the opinion that the two-year limitation on paternity actions found in § 32–36–09, N.D. C.C., is a limitation on the right to exercise the authority of that section, and such two-year limitation can only be tolled by the specific exceptions contained therein or when there is a showing under circumstances where principles of equity apply.

A review of the record reveals that Buehner at no time has acknowledged paternity of the child, Deberlee Aynn Fetch, in writing and, further, that he had not been judicially established to be her father. Therefore, the action by Orbadella Fetch

would be barred unless principles of equity would estop Buehner from asserting the two-year limitation of § 32–36–09, N.D.C. C.

The general rule recognized and applied in numerous cases is that the doctrine of equitable estoppel may be applied to preclude a defendant who had engaged in fraudulent or inequitable conduct from asserting the defense of a statute of limitations. L & W Construction Company v. Kinser, 251 Iowa 56, 99 N.W.2d 276 (1959); Johnson v. State, 186 Okl. 80, 96 P.2d 313 (1939); Kroeger v. Farmers' Mut. Ins. Co., 52 S.D. 433, 218 N.W. 17 (1928); 130 A.L.R. 8; 15 A.L.R.2d 491; 24 A.L.R.2d 1413. However, the general rule stated above is not, according to the majority of cases, applicable to statutes which create a new cause of action and in the same statutes limit the time for commencing suit thereunder. Langer v. Gray, 75 N.D. 1, 25 N.W.2d 89 (1946); Brown v. Box, 38 Ill.2d 80, 230 N.E.2d 204 (1967); Smith v. Gabrielli, 80 Nev. 390, 395 P.2d 325 (1964); Hernandez v. Anaya, 66 N.M. 1, 340 P.2d 838 (1959); Deckert v. Burns, 75 S.D. 229, 62 N.W.2d 879 (1954); 15 A.L.R.2d 491; 24 A.L.R.2d 1413.

Many cases support the rule that:

> "Where . . . the limitation is on the right to exercise the authority, the failure to proceed within the time limited may not be excused and no explanation as to why proceedings were not taken within the time prescribed will toll the statute or prevent the bar unless the statute itself contains a saving clause." Langer v. Gray, *supra,* 25 N.W.2d at 91–92.

However, a minority of courts have persuasively dissented from the inflexible application of such rule. The minority position is discussed in Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253 (4th Cir. 1949), cert. den. 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343 [appealed on other issues, 190 F.2d 935 (1951)], a case which involved a misrepresentation of facts by the defendant made to the plaintiff which resulted in the plaintiff being lulled into a false sense of security, thereby causing his claim to be subject to the bar of the limitation contained in the statute which created his cause of action.

In the case of *Scarborough, supra,* the court stated that the much-discussed distinction between remedial statutes of limitations and substantive statutes of limitations was essentially technical and conceptualistic rather than realistic. In relating its distaste for such legalistic distinctions, the court, in *Scarborough, supra,* 178 F.2d at 258–259, stated:

> "Remedial statutes should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers. And unless the statute so requires with crystal clarity, it should not be so applied as to negative broad principles well settled in our law by a long series of decisions. And just such a principle was set out by Vice Chancellor Leaming, in Howard v. West Jersey & Southern Railroad Co., 102 N.J.Eq. 517, 141 A. 755:
>
> " 'One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.'
>
> "Vice Chancellor Leaming thus applies to statutes of limitations the ancient and beneficent doctrine of estoppel. And nothing is better settled, as a general principle, than the rule that, wherever found and in whatever guise, fraud will, in some way or manner, never be permitted to give an inequitable advantage to the one who has consciously perpetrated the fraud.

. . . . . .

". . . the distinction between a remedial statute of limitations and a substantive statute of limitations is by no means so rock-ribbed or so hard and fast as many writers and judges would have us believe. Each type of statute, after all, still falls into the category of a statute of limitations. And this is none the less true even though we call a remedial statute a pure statute of limitations and then designate the substantive type as a condition of the very right of recovery. There is no inherent magic in these words.

"It has often been said that a primary purpose of statutes of limitations in general has been the prevention of fraud. It is freely conceded by appellee here that fraud will toll the running of the so-called remedial statute of limitations. We cannot see a distinction and a difference, so clear and so real, between the two classes of statutes of limitations— the remedial and the substantive—as to justify the courts in fully giving effect to fraud in tolling the statute in one type (remedial) and then flatly denying that effect to fraud in the other type (substantive). The ancient maxim that no one should profit by his own conscious wrong is too deeply imbedded in the framework of our law to be set aside by a legalistic distinction between the closely related types of statutes of limitations."

Application of this equitable exception to the rule that a substantive statute of limitations may not be extended under any circumstances is further justified by § 31–11–06, N.D.C.C., the effect of which was to enact into substantive law the equitable principle of estoppel and render it cognizable in both law and equity. Neset v. Rudman, 74 N.W.2d 826 (N.D.1956). Such application is also consistent with § 1–02–01, N.D.C.C., which states, in part, that all

". . . proceedings under . . . [the code] are to be construed liberally,

with a view to effecting its objects and to promoting justice."

Certainly an equitable exception to the limitation of § 32–36–09, N.D.C.C., would promote justice and further one of the primary purposes of the Legislature in enacting Chapter 32–36, N.D.C.C., which was to provide support for an illegitimate child where such support is due.

 While this court recognizes the application of the doctrine of equitable estoppel as a bar to the assertion by a defendant of the defense of a substantive statute of limitations such as that set out in § 32–36–09, N.D.C.C., it also recognizes that the doctrine contains specific elements which the plaintiff has the burden of proving. 10 Am.Jur.2d, Bastards § 79, p. 906. Thus, one claiming that the defendant is estopped to rely on a substantive statute of limitations must show from the nature of defendant's statements and all of the surrounding facts and circumstances that the statements were made with the idea that plaintiff would rely thereon. Scarborough v. Atlantic Coast Line R. Co., *supra,* 190 F.2d 935 (1951). In addition, plaintiff must show that she relied on the representations or acts of defendant and, as a result of that reliance, she failed to commence the action within the prescribed period. Bayuk v. Edson, 236 Cal.App.2d 309, 46 Cal.Rptr. 49 (1965); Robinson v. City of New York, 24 A.D.2d 260, 265 N.Y.S.2d 566 (1965); Reat v. Illinois Central Railway Company, 47 Ill.App.2d 267, 197 N.E. 2d 860 (1964); 24 A.L.R.2d 1413. Finally, the plaintiff must show that the acts of defendant giving rise to the assertion of estoppel must have occurred before the expiration of the limitation period. Bank of America Nat. Trust & Savings Ass'n v. Williams, 89 Cal.App.2d 21, 200 P.2d 151 (1948); Clinard v. Pennington, 59 Tenn. App. 128, 438 S.W.2d 748 (1968).

 While it is the general rule that we will give appreciable weight to the findings of the trial court in reviewing the facts on

a trial de novo [Automobile Club Insurance Company v. Hoffert, 195 N.W.2d 542 (N.D.1972); Koistinen v. Farmers Union Oil Company of Rolla, 179 N.W.2d 327 (N.D.1970); Parceluk v. Knudtson, 139 N.W.2d 864 (N.D.1966); Renner v. Murray, 136 N.W.2d 794 (N.D.1965)], we are not bound by such findings. Kelmis v. Cardinal Petroleum Company, 156 N.W.2d 710 (N.D.1968). Consequently, it is incumbent upon this court to find the facts anew, as well as to determine from the record whether or not Orbadella Fetch has met her burden of proof with respect to the elements of the doctrine of equitable estoppel to assert the substantive statute of limitations of § 32–36–09, N.D.C.C.

■ A perusal of the record indicates that at no time did Buehner expressly agree to provide support for Deberlee Aynn. Rather, the record is replete with evidence of Buehner's attempts to avoid any discussion of marriage or any other relationship with Orbadella Fetch which would lead to his assumption of a support obligation. In addition, any conduct by Buehner, such as his expenditure of money for gasoline for Orbadella Fetch and gifts for Deberlee Aynn and the other Fetch children was sporadic at best, and thus is insufficient evidence to prove any misleading promises made by Buehner to Orbadella Fetch. In light of the equivocal nature of the above evidence, we conclude that any statements made or acts committed by Buehner were not made or committed with the idea that Orbadella Fetch would rely thereon to her ultimate detriment. She has therefore failed to meet her burden of proof with respect to this element of the doctrine of equitable estoppel.

■ The record also contains testimony of Orbadella Fetch to the effect that during the summer after the birth of Deberlee, she tried to terminate her relationship with Buehner. Her testimony also reveals that her desire to terminate her relationship with Buehner was fomented and augmented by Buehner's continuous and manifest reluctance to assume any support obligation with respect to Deberlee. In light of this desire to terminate her relationship with Buehner, which desire was caused by Buehner's reluctance to assume any support obligation, we conclude that Orbadella Fetch did not in fact rely on anything said or done by Buehner. Therefore, she has also failed to meet her burden of proving actual reliance on the statements or acts of Buehner.

■ Finally, Orbadella Fetch has urged that the record discloses a factual basis for establishing duress inflicted upon her by Buehner, which duress would estop him from asserting the limitation of § 32–36–09, N.D.C.C. However, the record does not indicate that Buehner's conduct in threatening Orbadella Fetch resulted in deterring her from asserting her rights in a timely manner. Furthermore, the record indicates that even if Buehner's conduct did have the effect of deterring her from asserting her rights, such conduct occurred in the fall of 1965, after the two-year limitation of § 32–36–09, N.D.C.C., had expired. Therefore, Buehner's conduct could not properly be urged as a factual basis for the application of the doctrine of equitable estoppel, since his conduct, in order to invoke the application of the doctrine, must necessarily have occurred before the expiration of the two-year limitation period of § 32–36–09, N.D.C.C.

The judgment of the district court is therefore reversed.

STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.