**Irene Meyers BURR, Plaintiff and Appellant,**

v.

**TRINITY MEDICAL CENTER; St. Joseph's Hospital; Kathryn Guggenheim, M.D.; K.J. Keller, M.D.; K.H. Lee, M.D.; Berchmans Rioux, M.D.; and Irwin J. Epstein, M.D., Defendants and Appellees.**

Civ. No. 920155.

Supreme Court of North Dakota.

Dec. 1, 1992.

---

Robert J. Golten (argued), Fredericks, Pelcyger, Hester & White, Boulder, Colo., and Carl O. Flagstad, Jr. (appearance), Minot, for plaintiff and appellant.

John C. Kapsner (argued on behalf of all defendants and appellees), Kapsner & Kapsner, Bismarck, for defendant and appellee St. Joseph's Hosp.; appearance by Leslie Bakken Oliver.

Patrick J. Maddock, McElroy, Camrud, Maddock & Olson, Ltd., Grand Forks, for defendant and appellee Trinity Medical Center.

Donald L. Peterson, McGee, Hankla, Backes & Wheeler, P.C., Minot, for defendant and appellee Kathryn Guggenheim, M.D.

Dean A. Hoistad, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, Minn., for defendant and appellee K.H. Lee, M.D.

William P. Zuger, Zuger Law Offices, Bismarck, for defendant and appellee Irwin J. Epstein, M.D.

Lance D. Schreiner, Zuger, Kirmis, Bolinske & Smith, Bismarck, for defendant and appellee K.J. Keller, M.D.

H. Patrick Weir, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendant and appellee Berchmans Rioux, M.D.

ERICKSTAD, Chief Justice.

Irene Meyers Burr (Burr) appeals from an order and judgment entered by the District Court for Ward County on March 31,

1992, dismissing with prejudice her claim of wrongful death resulting from medical malpractice against Kathryn Guggenheim, M.D., K.J. Keller, M.D., K.H. Lee, M.D., Berchmans Rioux, M.D., Irwin J. Epstein, M.D., Trinity Medical Center, and St. Joseph's Hospital (Medical Defendants). We affirm.

In the early morning hours of July 6, 1988, Kelly Meyers (Meyers) was arrested at his girlfriend's apartment in New Town, North Dakota, by law enforcement officers from the Bureau of Indian Affairs (BIA) and the city of New Town, on an alleged drunk and disorderly complaint. He was detained in the local jail following his arrest. Hours after his arrest, he was found on the floor of his jail cell unable to move his arms and legs. Authorities transported Meyers to Trinity Medical Center in Minot, North Dakota, where he was diagnosed with alcohol intoxication and dependence, and a possible conversion reaction or malingering. He was admitted to the psychiatric unit at St. Joseph's Hospital in Minot. Two days subsequent, on July 8, 1988, Meyers suffered respiratory failure, became comatose, and was transported to St. Alexius Medical Center in Bismarck, North Dakota. Eleven days later, on July 19, 1988, Meyers died. An autopsy report revealed that Meyers suffered a broken neck, possibly occurring during his arrest by the BIA and New Town police.

Burr is Meyers' mother. On July 3, 1990, Burr brought an action in the United States District Court, District of North Dakota, against the United States, the BIA, and the city of New Town (Government Defendants).[1] In the same case, Burr sued the Medical Defendants for wrongful death resulting from medical malpractice, and asserted diversity jurisdiction under 28 U.S.C. § 1332.

The claims against the Government Defendants were settled. Subsequently, the Medical Defendants jointly filed a motion to dismiss, arguing that the federal court did not have subject matter jurisdiction over them for lack of diversity and lack of pendent party jurisdiction. On August 27, 1991, the federal court granted the Medical Defendants' joint motion and dismissed Burr's action without prejudice.[2]

On November 26, 1991, Burr filed an action for wrongful death resulting from medical malpractice against the Medical Defendants in the state district court. Each of the Medical Defendants filed a timely response and motion for summary judgment, asserting that the claim was time-barred by the statute of limitations.[3] The state district court granted the Medical Defendants' motions and dismissed Burr's case with prejudice. This appeal followed, with the sole issue being whether or not the statute of limitations in a state cause of action is equitably tolled while the cause of action is asserted in a federal court under pendent jurisdiction.[4] We hold, in this particular case, that the statute of limitations was not equitably tolled.

---

1. The claims against the United States and the BIA were brought under the Federal Tort Claims Act (FTCA) and jurisdiction was asserted under 28 U.S.C. § 1346 (FTCA) and 28 U.S.C. § 1331 (federal question). The claims against the city of New Town were brought pursuant to 42 U.S.C. § 1983 and jurisdiction was asserted under 28 U.S.C. § 1343(a)(3) (civil rights claims).

2. Burr appealed that dismissal to the United States Court of Appeals for the Eighth Circuit. The appeal has been fully briefed and argued, and a decision is pending.

3. The statute of limitations for wrongful death resulting from medical malpractice is two years from discovery of the malpractice. Section 28–01–18(4), N.D.C.C.

4. The federal court, in footnote 2 of its order dismissing Burr's state law claim, defines a pendent claim and explains why the court refused Burr pendent jurisdiction.

"Plaintiff appears to suggest that this court may have pendent claim jurisdiction. Pendent claims are state law claims which arise from the same 'common nucleus of operative facts' as that of the substantial federal claim and which if 'considered without regard to their federal or state character, ... are such that [plaintiffs] would ordinarily be expected to try them all in one judicial proceeding.' *Alumax Mill Products v. Congress Financial Corp.*, 912 F.2d 996, 1005 (8th Cir.1990); quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 [86 S.Ct. 1130, 1138, 16 L.Ed.2d 218] (1966). The classic pendent claim jurisdiction case is one in which the plaintiff asserts two

The legislature has spoken concerning the time within which claims must be brought asserting medical malpractice resulting from wrongful death. It enacted Section 28–01–18(4), N.D.C.C., which specified that a cause of action for wrongful death is to be brought within two years of the death. However, if the death results from malpractice, "the claim for relief is deemed to have accrued at the time of the discovery of the malpractice." *Id.*

Burr asserts that even though the legislature has limited the time within which she must bring her claim, we may extend her time beyond the limit utilizing the doctrine of equitable tolling. In essence, she contends that we may toll, through equity,[5] the statute of limitations in North Dakota courts while she asserts her claim in federal court, as long as her first filing in federal court was timely under the North Dakota statute, which it was. She asserts that North Dakota district courts have jurisdiction to do both law and equity, as pronounced by the legislature in Section 27–05–06, N.D.C.C. It provides:

"*Jurisdiction of district courts.* The district courts of this state have the general jurisdiction conferred upon them by the constitution, and in the exercise of such jurisdiction they have power to issue all writs, process, and commissions provided therein or by law or which may be necessary for the due execution of the powers with which they are vested. Such courts have:

\* \* \* \* \* \*

3. All the powers, according to the usages of *courts of law and equity,*

necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice, and to carrying into effect their judgments, orders, and other determinations, subject to a reexamination by the supreme court as provided by law."

*Id.* (emphasis added).[6]

While recognizing that district courts possess the power to fashion equitable remedies, we are compelled to acknowledge that the legislature has also codified a list of priorities of authoritative law in North Dakota. In viewing that denotation of authority, we observe that common law falls at the very bottom.

"*Expression of law.* The will of the sovereign power is expressed by:

1. The Constitution of the United States.

2. Treaties made under the authority of the United States.

3. Statutes enacted by the Congress of the United States.

4. The constitution of the state.

5. The *statutes of the state.*

6. The ordinances of other and subordinate legislative bodies.

7. The decisions of the tribunals enforcing those rules, which, though not enacted, form what is known as *customary or common law.*"

Section 1–01–03, N.D.C.C. (emphasis added). A further indicia of the preferable treatment afforded statutory law rather

---

transactionally-related claims, one claim jurisdictionally sufficient and the other jurisdictionally insufficient, *against a single defendant* in one action. *Alumax,* 912 F.2d at 1005. In the present claim, there is not a jurisdictionally sufficient claim to which the jurisdictionally insufficient claim can be 'pendent'. Therefore, the court may not exercise pendent claim jurisdiction over the remaining defendants."

5. We would toll the statute, if at all, through equitable doctrines because the legislature in this state has not adopted a "savings statute." Many states have enacted statutes which are codified equivalents of the equitable tolling doc-

trine. Some states had done so as far back as the 1960's. North Dakota, however, has never codified the equity doctrine of equitable tolling.

6. District courts have jurisdiction in both law and equity; however, county courts have limited equitable jurisdiction unless the county court is designated to act as a district court. *See* Sections 27–07.1–17 and 27–07.1–33, N.D.C.C.; *South Forks Shopping Center v. Dastmalchi,* 446 N.W.2d 440 (N.D.1989). *See also Volk v. Volk,* 121 N.W.2d 701 (N.D.1963); *Muhlhauser v. Becker,* 76 N.D. 402, 37 N.W.2d 352 (1948).

than common law is found in Section 1–01–06, N.D.C.C., which states: "In this state there is *no common law in any case where the law is declared by the code.*" *Id.* (emphasis added).

■ The above statutory laws bespeak the legislature's persistence that codified law commands more attention and compliance than common law. Therefore, it would be inappropriate for district courts to haphazardly fashion equitable remedies with no deference to codified law. Instead, district courts should tread carefully when entering the realm of equitable remedies, fashioning them only when directed to do so by statutes and court rules, when there is no adequate legal remedy, or when the equitable remedy is better adjusted to render complete justice. *See D.C. Trautman Co. v. Fargo Excavating Co.*, 380 N.W.2d 644, 645 (N.D.1986) ("[a] party is not entitled to equitable relief if there is a remedy provided by law which is equally adjusted to rendering complete justice"); *A & A Metal Bldgs. v. I–S, Inc.*, 274 N.W.2d 183, 188 (N.D.1978) ("[a] court has equitable jurisdiction to provide a remedy where none exists at law"); *Ziebarth v. Kalenze*, 238 N.W.2d 261, 267 (N.D.1976) ("the existence of a remedy at law does not preclude equitable relief if the equitable remedy is better adapted to render more perfect and complete justice"); *Graven v. Backus*, 163 N.W.2d 320, 327 (N.D.1968) ("if the equitable remedy is better adapted to render more perfect and complete justice than" the legal remedy, it should be implemented).

This Court has never applied the doctrine of equitable tolling to prevent a statute of limitations from running. It is a question of first impression for us. There are existing, however, various other options a plaintiff may employ to extend or avoid the statute of limitations in a particular case. For instance, this state has long recognized the doctrine of equitable estoppel. *See* Section 31–11–06, N.D.C.C.[7] It has been asserted in various cases in an attempt to defeat a defendant's statute of limitations defense. *See Schmidt v. Grand Forks Country Club*, 460 N.W.2d 125 (N.D.1990) (unsuccessful use of equitable estoppel); *Szarkowski v. Reliance Ins. Co.*, 404 N.W.2d 502 (N.D.1987) (case reversed and remanded for factual determination on equitable estoppel); *Krueger v. St. Joseph's Hospital*, 305 N.W.2d 18 (N.D.1981) (summary judgment reversed and remanded due to factual issues indicating that defendants should have been equitably estopped from asserting a statute of limitations defense); *Fetch v. Buehner*, 200 N.W.2d 258 (N.D. 1972) (unsuccessful use of equitable estoppel).

■ To successfully implement the doctrine of equitable estoppel, the plaintiff must carry the burden of proving three elements. *Fetch v. Buehner*, 200 N.W.2d at 261. First, the plaintiff must prove that the defendant made statements and "from the nature of defendant's statements and all of the surrounding facts and circumstances that the statements were made with the idea that plaintiff would rely thereon." *Id.* Second, the "plaintiff must show that she relied on the representations or acts of defendant and, as a result of that reliance, she failed to commence the action within the prescribed period." *Id.* Lastly, "the plaintiff must show that the acts of defendant giving rise to the assertion of estoppel must have occurred before the expiration of the limitation period." *Id.*[8]

In the case at bar, Burr cannot successfully assert the doctrine of equitable estoppel, nor does she try. There were no statements made to Burr by any of the Medical

---

7. Enacted in original form in 1897.

8. This Court set forth a more comprehensive discussion of the general elements and theories encompassing equitable estoppel in *Farmers Cooperative Ass'n of Churchs Ferry v. Cole*, 239 N.W.2d 808 (N.D.1976), and its progeny. *See Johnson v. North Dakota Workers' Comp. Bu-* *reau*, 484 N.W.2d 292 (N.D.1992); *St. John P.S.D. v. Engineers–Architects*, 414 N.W.2d 285 (N.D.1987); *Cooke v. Blood Systems, Inc.*, 320 N.W.2d 124 (N.D.1982); *Gruebele v. Mott Grain Co.*, 262 N.W.2d 747 (N.D.1978).

Defendants which caused her to rely on the statements and prevented her from filing the action in state court within the prescribed time limits. In fact, the original filing against the Medical Defendants, in federal court, was timely under the North Dakota statute of limitations. Thus, the doctrine of equitable estoppel is not applicable to the Medical Defendants and they are, therefore, not deprived of using the statute of limitations defense against Burr.

Burr also points to the discovery rule as an example of how this Court has recognized an equitable method for plaintiffs to extend the statutory time limit. In *Iverson v. Lancaster*, 158 N.W.2d 507 (N.D.1968), we determined that the limitation period for a malpractice action commences to run at the time of the discovery of the malpractice. In addressing the limitation issue, we felt compelled to clarify the then existing statute of limitations for malpractice actions, which read:

"Actions having two years limitations.—The following actions must be commenced within two years after the cause of action has accrued:

\* \* \* \* \* \*

3. An action for the recovery of damages resulting from malpractice."

*Iverson v. Lancaster*, 158 N.W.2d at 509 (*quoting* Section 28–01–18(3), N.D.C.C.).

We do not believe that Burr gains any advantage by relying on *Iverson*. First, in *Iverson*, we were interpreting a statute that was much more vague and indefinite than the current enactment. *See* Section 28–01–18(4), N.D.C.C.[9] The statute we construed in *Iverson* contained no indication of when an action "accrued." We supplied that by saying "the cause of action does not accrue until the patient learns of, or in exercise of reasonable care and diligence

should have learned of" the malpractice. *Iverson v. Lancaster*, 158 N.W.2d at 510 (*quoting Johnson v. St. Patrick's Hospital*, 148 Mont. 125, 417 P.2d 469, 473 (1966)).

The statute we apply today contains within it the discovery language leaving no need or room for construction. To the contrary, the indefiniteness of the statute was one of the primary motivations for the decision in *Iverson*.

"After studying the various approaches taken by the courts, the recent trend of decisions to depart from the 'general rule,' *the indefinite language of our statute*, and our belief that justice is best served when claims are adjudicated on their merits, we conclude that the best rule is that the limitation period commences to run against a malpractice action from the time the act of malpractice with resulting injury is, or by reasonable diligence could be, discovered."

*Iverson v. Lancaster*, 158 N.W.2d at 510 (emphasis added). Burr is not asserting that the present statute is vague. Quite the opposite is true. Instead, she is asking us to *go outside of the statute* and allow her to file her claim. There is a vast difference between the two situations.

Furthermore, we are not persuaded that we relied on rules of equity in *Iverson* when adopting the discovery rule for North Dakota. We were interpreting the statute, its meaning, and legislative intent. As explained, we faced a very different set of circumstances than those present in this case. Accordingly, we are not persuaded by Burr's request to rely solely on equity to extend the statutory time limit.

■ We do not view either of the above factors (equitable tolling or the discovery rule) as propitious to Burr's argument.

**9.** Section 28–01–18(4), N.D.C.C. provides:
"An action for injuries done to the person of another, when death ensues from such injuries, and the claim for relief must be deemed to have accrued at the time of the death of the party injured; provided, however, that when death ensues as the result of malpractice, the claim for relief is deemed to have accrued at the time of the discovery of the malpractice. However, the limitation will not be extended beyond six years of the act or omission of alleged malpractice by a nondiscovery thereof unless discovery was prevented by the fraudulent conduct of the physician or hospital."

Burr must rely on the doctrine of equitable tolling alone when requesting a reversal of the district court. As previously stated, this Court has heretofore not adopted the doctrine of equitable tolling to prevent the running of a statute of limitations. In light of the specific language of the statute we are required to apply in this case, and specific circumstances of this case, we find an insufficient basis for applying such a doctrine.

In viewing the state district court's order dismissing Burr's action as time-barred, the court expressed two reasons for its decision. First, the court determined that Burr did not meet "her burden of showing that the [district court] should exercise its right to evoke the principles of equitable estoppel as set forth in N.D.C.C. § 31–11–06." Further, the court held that this Court "has not adopted the doctrine of equitable tolling of the statute of limitations. The [district court] concludes based upon the decision of *Fetch v. Buehner*, 200 N.W.2d 258 (N.D.1972) that if the doctrine of equitable tolling is to be adopted, that [it] is the prerogative of the legislative branch and not the judicial branch [to do so]."

█ From what we have said herein it is obvious that we are not convinced that it is appropriate for us to adopt and apply the doctrine of equitable tolling to this case, but were we to do so Burr would still lose. Let us explain.

The Supreme Court of California has set forth three requirements that plaintiffs must satisfy before the doctrine of equitable tolling will save their otherwise time-barred claims.

> "[A]pplication of the doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff."

*Addison v. State*, 21 Cal.3d 313, 146 Cal. Rptr. 224, 578 P.2d 941, 943–44 (1978).

In reviewing those three requirements keeping the facts of this case in mind, it is evident that Burr did not satisfy all of the requirements of equitable tolling. Although her first filing was timely, she was not diligent, and her inaction prejudiced the Medical Defendants. In essence, she frustrated a very important purpose of the statute of limitations by "sleeping on [her] legal rights to the detriment of the [Medical Defendants]." *Erickson v. Scotsman, Inc.*, 456 N.W.2d 535, 537 (N.D.1990) (*quoting Hanson v. Williams County*, 389 N.W.2d 319, 321 (N.D.1986)).

Following the filing of her action against the Medical Defendants in federal court, Burr did not take a deposition of the numerous Medical Defendants or their staff. The depositions taken were at the Medical Defendants' initiative and were not, of course, of any of the medical personnel; instead, Burr and other related witnesses were deposed. It is now four years later and Burr has failed to officially document any technical, specific medical evidence she may have acquired through discovery. It would have been in Burr's best interest to take depositions in this type of case as soon as possible, viewing the nature of medical evidence and the workload of potential medical witnesses. The postponing of the taking of depositions for four years could not help but significantly affect the quality of the evidence.

Burr's conduct subsequent to filing her malpractice claim is the very conduct at which the purpose of statutes of limitations is directed.

> "Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' *Order of Railroad Telegraphers v. Rail-*

*way Express Agency, Inc.,* 321 U.S. 342, 348–349 [64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)]. Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights."

*Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965).

Furthermore, Burr was made aware by the Medical Defendants' answers, shortly after filing her claim in federal court, that she lacked diversity jurisdiction. Yet, she failed to bring the malpractice claim in state court. When those answers were filed in federal court, Burr was forewarned that she might not be successful there. Reasonable action in light of those answers dictated that she file her malpractice claim in state court. This she did not do until November 26, 1991, more than three years and four months after Kelly Meyer's death. This discloses lack of diligence.[10]

For the foregoing reasons, we affirm the state district court's order and judgment dismissing Burr's action under the statute of limitations, Section 28–01–18(4), N.D.C.C.

VANDE WALLE, J., VERNON R. PEDERSON and BERT L. WILSON, Surrogate Judges, and ALLAN L. SCHMALENBERGER, District Judge, concur.

ALLAN L. SCHMALENBERGER, District Judge, BERT L. WILSON and VERNON R. PEDERSON, Surrogate Judges, sitting in place of MESCHKE, LEVINE and JOHNSON, JJ., disqualified.

---

**10.** Burr argues that she acquired pendent jurisdiction under another theory in addition to diversity, and therefore did not need to remove the state claim upon discovery of the lack of diversity jurisdiction. The federal district court disagreed. We are not in a position to second guess or quarrel with that holding. Such an issue is not before us. Burr was adjudicated in federal court as lacking subject matter jurisdiction over her state law claim, and that is the posture with which we must address her case in our Court.