2000 SD 27

**Ruby PETERSON, Individually and as the Special Administratrix of the Estate of Edward L. Peterson, Deceased, Plaintiff and Appellant,**

v.

**Robert C. HOHM, M.D.; Paul Hohm, M.D.; Tschetter & Hohm Clinic, P.C.; and Knute Landreth, M.D., Defendants and Appellees.**

No. 20975.

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1999.

Decided Feb. 23, 2000.

---

Glen H. Johnson and Kristi K. Wammen of Johnson, Eiesland, Huffman & Clayborne, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

Kathryn J. Hoskins of Siegel, Barnett & Schutz, Sioux Falls, South Dakota, Attorneys for defendants and appellees Hohms and Clinic.

Edwin E. Evans and Lori Purcell Fossen of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellee Landreth.

AMUNDSON, Justice.

[¶ 1.] Ruby Peterson (Ruby) appeals the circuit court's granting of summary judgment in favor of Robert C. Hohm, Paul Hohm, Tschetter & Hohm Clinic, and Knute Landreth (Doctors). We affirm.

### FACTS

[¶ 2.] On March 22, 1995, Edward Peterson (Edward), who was sixty years old, went to the Tschetter and Hohm Clinic in Huron, South Dakota, complaining of headaches, nausea, vomiting and neck stiffness. He received a CT Scan of his head, was treated by Doctors at the clinic and released. On April 3, 1995, Edward suffered an undiagnosed cerebral hemorrhage that caused him to collapse. He died six days later.

[¶ 3.] At the time of Edward's death, he and Ruby were residents of Beadle County, South Dakota. Shortly after Edward's death, Ruby moved to Fairmont, Minnesota. On March 10, 1997, the Honorable Eugene Martin, Third Circuit, Beadle County, granted Ruby's petition for appointment as special administratrix of Edward's estate. On March 21, 1997, Ruby filed a medical malpractice action on behalf of her husband's estate against Doctors in the United States District Court for South Dakota based upon diversity of citizenship. In her complaint, Ruby alleged that Doctors were negligent in their failure to diagnose and treat Edward for his cerebral aneurysm. Doctor Knute Landreth (Landreth) asserted in his separate answer that no jurisdiction existed. After Doctors filed their answer, the parties undertook discovery, which included: depositions of the parties, exchange of interrogatories and production requests, and identification and disclosure of expert witnesses.

[¶ 4.] Over one year after Doctors filed their answer, they moved to dismiss the action for lack of subject matter jurisdiction. Doctors argued that in determining diversity of citizenship under 28 U.S.C. § 1332(c)(2), the citizenship of the legal representative of the estate of a decedent is deemed to be the same as the decedent at the time of death.[1] While Doctors' motion to dismiss was pending, Ruby filed a state court action on June 23, 1998, in Beadle County, South Dakota, alleging issues identical to the federal action. On September 17, 1998, the federal court found that the decedent and Doctors were all residents of South Dakota; therefore, no diversity of citizenship existed and the suit was dismissed for lack of subject matter jurisdiction.

[¶ 5.] Subsequently, Doctors filed a motion for summary judgment in the state court action on the grounds that the statutes of limitations had run. Doctors argued that under SDCL 15–2–14.1 the statute of limitations for medical malpractice is two years from the alleged malpractice. In addition, the statute of limitations under SDCL 21–5–3 for a wrongful death action is three years. The circuit court noted that Ruby filed the state court action 440 days after the expiration of the statute of limitations for a medical malpractice claim, and 75 days after the expiration of the statute of limitations for a wrongful death action. The trial court found that both statutes of limitations had expired and granted Doctors' summary judgment motion.

[¶ 6.] Ruby appeals, raising the following issue:

Whether the trial court erred in holding that the state statute of limitations was not tolled or deemed satisfied during the pendency of Ruby's federal court action against Doctors.

**STANDARD OF REVIEW**

[¶ 7.] Our standard of review of a trial court's granting of summary judgment is well established. We have often stated:

"In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper."

*Wissink v. Van De Stroet,* 1999 SD 92, ¶ 9, 598 N.W.2d 213, 215 (quoting *Millard v. City of Sioux Falls,* 1999 SD 18, ¶ 8, 589 N.W.2d 217, 218 (quoting *Walther v. KPKA Meadowlands Ltd. Partnership,* 1998 SD 78, ¶ 14, 581 N.W.2d 527, 531 (citation omitted))). When faced with " 'a summary judgment motion where the defendant asserts the statute of limitations as a bar to the action and presumptively establishes the defense by showing the case was brought beyond the statutory period, the burden shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations[.]' " *Id.* (quoting *Strassburg v. Citizens State Bank,* 1998 SD 72, ¶ 5, 581 N.W.2d 510, 513 (citations omitted)) (alterations in original). It is well settled that " '[s]ummary judgment is proper on statute of limitations issues only when application of the law is in question, and not when there are remaining issues of material fact.' " *Id.* (quoting *Greene v. Morgan, Theeler, Cog-*

1. Under 28 U.S.C. § 1332(c)(2), "the legal representative of the estate of a decedent shall be deemed a citizen only of the same State as the decedent[.]"

*ley & Petersen,* 1998 SD 16, ¶ 6, 575 N.W.2d 457, 459 (citing *Kurylas, Inc. v. Bradsky,* 452 N.W.2d 111, 113 (S.D.1990))).

[¶ 8.] Generally, a statute of limitations question is left for the jury; however, " '[d]eciding what constitutes accrual of a cause of action' " is a question of law and reviewed de novo. *Id.* (quoting *Strassburg,* 1998 SD 72, ¶ 7, 581 N.W.2d at 513 (citing *Bosse v. Quam,* 537 N.W.2d 8, 10 (S.D.1995) (citation omitted))) (alteration in original). In reviewing under this standard, "[w]e give no deference to the trial court's conclusions of law." *Stratmeyer v. Stratmeyer,* 1997 SD 97, ¶ 11, 567 N.W.2d 220, 222 (citing *City of Colton v. Schwebach,* 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771).

## DECISION

[¶ 9.] **Whether the trial court erred in holding that the state statute of limitations was not tolled or deemed satisfied during the pendency of Ruby's federal court action against Doctors.**

[¶ 10.] It is undisputed that SDCL 15–2–14.1 and SDCL 21–5–3 apply. Under SDCL 15–2–14.1,

[a]n action against a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts for malpractice, error, mistake or failure to cure, whether based upon contract or tort, *can be commenced only within two years after the alleged malpractice, error, mistake or failure to cure shall have occurred* .... (Emphasis added.)

In addition, SDCL 21–5–3 provides that "[e]very action for wrongful death shall be commenced within three years after the death of such deceased person." It is also undisputed that both statutes of limitation had expired by the time Ruby filed her complaint in state court.

·[¶ 11.] In many jurisdictions, "legislatures have enacted saving statutes that allow a plaintiff whose case has been dismissed otherwise than on the merits to pursue the action even though the statute of limitations has run." *See Galligan v. Westfield Centre Serv., Inc.,* 82 N.J. 188, 412 A.2d 122, 126–27 (1980) (Pollock, J., dissenting). *See generally* Annotation, 6 ALR3d 1043, 1058–1061 (1966) (discussing dismissals from federal court for lack of diversity jurisdiction and how state saving statutes apply). The South Dakota legislature has not enacted a "saving statute." Ruby contends, however, that by first filing her lawsuit in federal court she has "substantially complied" with the statutes of limitations and the statutes should be tolled. In addition, Ruby argues that the doctrine of equitable tolling should also apply to toll the statutes of limitations. We discuss these two arguments separately.

### a. Substantial Compliance

[¶ 12.] Whether the doctrine of substantial compliance tolls a statute of limitations is a question of first impression in this Court. In support of her argument that the doctrine of substantial compliance should be applied, Ruby cites several South Dakota cases in which we have recognized and applied the doctrine of substantial compliance. Notably, this Court has never recognized application of the doctrine of substantial compliance to issues relating to statutes of limitation. In our recent case of *Wagner v. Truesdell,* 1998 SD 9, ¶ 7, 574 N.W.2d 627, 629 (quoting *State v. Bunnell,* 324 N.W.2d 418, 420 (S.D.1982) (internal citations and quotations omitted)), we defined substantial compliance as:

" 'Substantial compliance' with a statute means actual compliance in respect to the substance essential to every reasonable objective of the statute. It means that a court should determine whether the statute had been followed sufficiently so as to carry out the intent for which it was adopted. Substantial compliance with a statute is not shown unless it is made to appear that *the purpose of the statute is shown to have been served.* What constitutes substantial compliance

with a statute is a matter depending on the facts of each particular case." (Emphasis added.)

In other words, the doctrine of substantial compliance is used when the purpose and objective of the statute has been met, but some defect has occurred to prevent total compliance. *See id.*

[¶ 13.] The trial court noted that the South Dakota decisions cited by Peterson dealt with notice statutes, not statutes of limitations. The trial court stated:

> The statute of limitations, while different, operates similar to the notice statute discussed in [*Myears v. Charles Mix County,* 1997 SD 89, 566 N.W.2d 470]. However, there is a substantial difference. Under the notice statute, a plaintiff must give written notice of the time, place and cause of the injury to the appropriate officer of the public entity involved. *Most of the cases involving substantial compliance deal with situations where while written notice was not properly served, actual or constructive notice was accomplished by the circumstances of the case.* (Emphasis added).

A review of these prior decisions discussing substantial compliance shows that they involved "notice" statutes, not statutes of limitation. *See, e.g., Samuelson v. Jorgenson,* 1999 SD 13, ¶¶ 9–10, 588 N.W.2d 598, 599 (refusing to apply the doctrine of substantial compliance because plaintiff had "strictly" complied with SDCL 15–2–31 in delivering the summons and complaint to the sheriff in the wrong county).[2]

[¶ 14.] Before embracing the doctrine of substantial compliance to toll the statute of limitations, we must look at "the purpose of the statute shown to have been served."

*See Wagner,* 1998 SD 9, ¶ 7, 574 N.W.2d at 629. The trial court properly noted that this Court has often stated, "[t]he purpose of a statute of limitations is speedy and fair adjudication of the respective rights of the parties." *State of Minn. v. Doese,* 501 N.W.2d 366, 370 (S.D.1993). *See Jiricek v. Woonsocket Sch. Dist. No. 55–4,* 489 N.W.2d 348, 350 (S.D.1992); *Merkwan v. Leckey,* 376 N.W.2d 52, 53 (S.D.1985); *Burke v. Foss,* 334 N.W.2d 861, 864 (S.D. 1983); *Chipperfield v. Woessner,* 84 S.D. 13, 14, 166 N.W.2d 727, 728 (1969). The trial court also noted that statutes of limitation have allowed people, through "legislative grace," to be "freed from the consequences of their actions after a statutory period of time resulting in peace of mind for the individual, less docket congestion, fewer administrative problems for the courts, and less work for law enforcement agencies. Stale claims are eliminated." *Id.* We agree.

[¶ 15.] The relevant statutes in this case require the action be "commenced" within the statutory period. *See* SDCL 15–2–14.1 and 21–5–3. Under Rule 3 of the Federal Rules of Civil Procedure, an action is commenced upon filing a complaint, whereas South Dakota requires that the defendant be served with a copy of the summons. *See* SDCL 15–2–30. The trial court properly noted that in South Dakota "an attempt to commence an action is deemed equivalent to the commencement of an action under ... SDCL 15–2–31." The complaint filed in federal district court lacked diversity jurisdiction and was never "a cause of action pending in a court of competent jurisdiction." Therefore, no action was properly commenced within either statutory period. While the facts

---

**2.** *See also Wood v. South Dakota Cement Plant,* 1999 SD 8, ¶ 11, 588 N.W.2d 227, 229–30 (noting that employer conceded on appeal that employee substantially complied with SDCL 3–21–2, which required him to give notice to a public entity within 180 days after his injury); *Myears,* 1997 SD 89, ¶ 17, 566 N.W.2d 470, 475 (finding that substantial compliance with SDCL 3–21–2 and 3–21–3, which required 180 days' notice be given to

public entity of intent to sue, was "the appropriate standard by which to gauge adequacy of notice"); *Walters v. City of Carthage,* 36 S.D. 11, 14, 153 N.W. 881, 882 (1915) (addressing statute requiring notice to city within sixty days of suit); *Inlagen v. Town of Gary,* 34 S.D. 198, 199, 147 N.W. 965, 966 (1914) (determining whether plaintiff complied with statute requiring notice within sixty days be given to town clerk of intent to sue).

surrounding Ruby's case are undeniably tragic, sympathy is not a valid reason to deviate from the well-settled purpose of statutes of limitation; a speedy and fair adjudication. It is our legislature's prerogative to enact statutes of limitations; as is its choice not to enact a "savings statute." Because our legislature has never created any type of "saving statute" for situations such as this, we are not about to judicially create one. To agree with Peterson's argument and adopt the minority view from New Jersey would be an end-run around the statute by judicial legislating.[3]

### b. Equitable Tolling

■ [¶ 16.] Ruby contends that the doctrine of equitable tolling should apply in this case. The North Dakota Supreme Court recently considered whether the doctrine of equitable tolling applied to toll a statute of limitations in *Braaten v. Deere & Company*, 569 N.W.2d 563, 564 (N.D. 1997). In *Braaten*, the court noted that to apply the doctrine, three things must be shown: "(a) timely notice, (b) lack of prejudice to the defendant, and (c) reasonable and good-faith conduct on the part of the plaintiff." *Id.* at 566 (citing *Burr v. Trinity Med. Ctr.*, 492 N.W.2d 904 (N.D.1992)). In rejecting the adoption of the equitable tolling doctrine, the court stated:

> Imprudent legal practice is not reasonable conduct and would not invoke equitable tolling.

> \* \* \*

> In the present case, the federal court never had jurisdiction over Braaten's claim. To allow equitable tolling here, when we did not in *Burr*, would reward poor legal research and further discourage the settlement of claims.

> Moreover, as we recognized in *Burr*, the plaintiff was made aware she lacked diversity jurisdiction shortly after the

medical defendants filed their answers.... "Reasonable action in light of those [motions] dictated that she file her [ ] claim in state court." Persisting in a jurisdictional posture while waiting for a federal court to make an inevitable ruling is unreasonable when the limitations statute is poised to terminate the lawsuit.

*Id.* at 566 (citations omitted) (alterations in original). In the present case, just as the court noted in *Braaten*,

> [Peterson] was made aware she lacked diversity jurisdiction shortly after [Dr. Landreth] filed [his] answers [and during the Rule 26(f) meeting].... Instead of trying to protect her lawsuit by filing an immediate state claim, [Peterson] sat on her hands for over [a year], waiting for a certain dismissal from federal court. 'Reasonable action in light of those [motions] dictated that she file her [ ] claim in state court.'

*Id.* (quoting *Burr*, 492 N.W.2d at 910).

[¶ 17.] In support of her position, Ruby once again cites to the minority view in the New Jersey cases of *Negron* and *Galligan*. A review of this minority position in *Galligan* shows Justice Pollock's dissent poignantly noting, "[t]he majority cites no case or other authority justifying amending the statute by judicial, rather than legislative action." 412 A.2d at 127 (Pollock, J., dissenting). Justice Pollock further stated:

> [T]he complaint [filed in federal court] showed a "patent lack of diversity" and indicated ignorance of "the rudiments of federal court jurisdiction." ... The filing of the complaint in the federal district court amounted to no more than a blur on the record. There never was a cause of action pending in a court of competent jurisdiction.

> The relevant statute of limitations ... [are] clear and do not provide for an exception. There is no legislative histo-

---

**3.** To agree with Ruby's argument to adopt the minority view set forth in *Negron v. Llarena,* 156 N.J. 296, 716 A.2d 1158 (N.J.1998) and

*Galligan* would amount to judicially enacting a savings statute.

ry suggesting that the Legislature ever contemplated tolling the statute where an action is instituted in a court with no subject matter jurisdiction.

*Id.* at 126 (Pollock, J., dissenting).

[¶ 18.] In this case, Ruby would have us hold that the filing of the action in federal court tolls the statute of limitations even though no diversity of citizenship existed between the parties. "A court may fill in the gaps in legislation. However, a court should not usurp the legislative function .... that principal means that this Court should not undertake to amend the statute of limitations by judicial fiat." *Id.* at 128 (Pollock, J., dissenting). We find the rationale of the North Dakota Supreme Court in *Braaten* and Justice Pollock's dissent in *Galligan* more convincing in view of the circumstances involved in this case.

[¶ 19.] We affirm.

[¶ 20.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.