Filed 3/15/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 58

Richard and Elaine Benson, Bill

and Mary Bliven, Don and Annette

Feist, Pat Lynch, and Lloyd and

Donna Tribitt, Plaintiffs and Appellants

v.

SRT Communications, Inc., Defendant and Appellee

No. 20110164

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable Todd L. Cresap, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Lynn M. Boughey, Box 836, Bismarck, N.D. 58502-0836, for plaintiffs and appellants.

David J. Hogue, 2525 Elk Drive, P.O. Box 1000, Minot, N.D. 58702-1000, for defendant and appellee.

Benson v. SRT Communications, Inc.

No. 20110164

Sandstrom, Justice.

[¶1] Richard and Elaine Benson, Bill and Mary Bliven, Don and Annette Feist, Pat Lynch, and Lloyd and Donna Tribitt (“Bensons”) appeal from a summary judgment dismissing their claim that SRT Communications, Inc., is contractually obligated to provide them post-retirement health and medical benefits.  We affirm the judgment, concluding the Bensons’ action is governed by federal law and they failed to raise a disputed issue of material fact.

I

[¶2] Northern States Power (“NSP”) owned a telephone business in Minot, North Dakota, which it sold in 1991 to Minot Telephone Company (“Minot Telephone”), a wholly-owned subsidiary of Rochester Telephone Company (“Rochester”).  In 1990, through Minot Telephone, Rochester contracted to purchase NSP’s assets for the telephone business under an asset purchase agreement (“NSP-Rochester asset purchase agreement”), and the North Dakota Public Service Commission approved the sale in 1991.  In 1993, Souris River Telecommunications Cooperative (“Souris River”) contracted to purchase Minot Telephone from Rochester, and the North Dakota Public Service Commission approved the sale in 1994.  That same year, Minot Telephone became a wholly-owned subsidiary of Souris River, and Souris River changed Minot Telephone’s name to SRT Communications.  In 2000, Souris River merged into SRT Communications.

[¶3] The Bensons are four retired employees of the Minot telephone business, their spouses, and Pat Lynch, the widow of a deceased retiree, Thomas Lynch.  Richard Benson, Bill Blevin, Don Feist, Lloyd Tribitt, and Thomas Lynch worked for NSP before it sold its telephone business to Minot Telephone in 1991, and they all retired from Minot Telephone between 1991 and 1994, before Souris River purchased Minot Telephone from Rochester.  With the exception of Don Feist, the retired employees belonged to Local Union No. 949 of the International Brotherhood of Electrical Workers when the labor union and NSP entered into a collective bargaining agreement in 1991.  Feist previously had been a member of the labor union, but did not belong to the union when it entered into the 1991 collective bargaining agreement with NSP.

[¶4] The 1991 collective bargaining agreement included a medical expense benefit plan for NSP employees, which took effect on January 1, 1991, and remained in effect until December 31, 1993.  Minot Telephone assumed the 1991 collective bargaining agreement under the NSP-Rochester asset purchase agreement.  SRT Communications did not deny paying the Bensons’ health insurance premiums and other medical benefits (“post-retirement health benefits”) after their respective retirements, and SRT Communications continued to provide the benefits through December 31, 2009.  In mid-2009, SRT Communications informed the Bensons, effective January 1, 2010, it would no longer offer health or other medical benefits to retired SRT Communications employees, their spouses, or their dependents once the retiree reached the age of Medicare eligibility.

[¶5] The Bensons sued SRT Communications, seeking a continuation of their post-

retirement health benefits, and they sought an ex parte restraining order, requiring SRT Communications to continue its coverage of their post-retirement health benefits until the district court resolved the case.  The district court granted the Bensons’ request for an ex parte restraining order.  SRT Communications moved for summary judgment under N.D.R.Civ.P. 56(b) and (c), contending that, as a matter of law, its 2009 decision to terminate post-retirement health benefits for its retired employees, including the Bensons, did not violate a contractual obligation or any federal law governing the Bensons’ claims.  Relying on the Labor Management Relations Act (“LMRA”) and the Employee Retirement Income Security Act (“ERISA”), the district court granted SRT Communications summary judgment, concluding the 1991 collective bargaining agreement and the NSP-Rochester asset purchase agreement were clear and unambiguous and raised no genuine issue of material fact.  The court concluded the 1991 collective bargaining agreement expired on December 31, 1993, and although SRT Communications continued to provide post-retirement health benefits to the Bensons for over fourteen years after the expiration of the collective bargaining agreement, it did so as a matter of business discretion and not because of a contractual obligation.  The district court dismissed the Bensons’ claims against SRT Communications.

[¶6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  The Bensons timely appealed under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

II

[¶7] The Bensons argue the district court erroneously granted SRT Communications summary judgment.  They argue their action is not based upon the 1991 collective bargaining agreement, but is based on a separate contractual agreement between themselves and Minot Telephone, which was created the day they retired and provided for post-retirement health benefits throughout their retirement.  They also argue SRT Communications purchased all of the telephone business’s liabilities, including the liability to pay its retirees post-retirement health benefits, when it purchased Minot Telephone from Rochester.  Additionally, the Bensons argue SRT Communications must continue providing post-retirement health benefits to them because they detrimentally relied on SRT Communications’ payment of the benefits for over fourteen years.

[¶8] “Summary judgment is a procedure for promptly resolving a controversy without a trial if the evidence shows there are no genuine issues as to any material fact and any party is entitled to judgment as a matter of law.”  
Gratech Co., Ltd. v. Wold Eng’g, P.C.
, 2003 ND 200, ¶ 8, 672 N.W.2d 672; N.D.R.Civ.P. 56(c).  “‘Even if a factual dispute exists, summary judgment is proper if the law is such that resolution of the factual dispute will not change the result.’”  
Id.
 (quoting 
Koapke v. Herfendal
, 2003 ND 64, ¶ 11, 660 N.W.2d 206).  We review a district court’s grant of summary judgment de novo.  
Lucas v. Riverside Park Condominiums Unit Owners Ass’n
, 2009 ND 217, ¶ 16, 776 N.W.2d 801.  We review the evidence in the light most favorable to the party opposing summary judgment.  
Makeeff v. City of Bismarck
, 2005 ND 60, ¶ 12, 693 N.W.2d 639.

 

A

[¶9] The Bensons argue their claims are based upon a separate contractual agreement between themselves and Minot Telephone that was created the day they retired and provided for post-retirement health benefits throughout their retirement.  The Bensons argue SRT Communications is contractually obligated to provide them with post-retirement health benefits because of the separate contractual agreement and not because of the 1991 collective bargaining agreement.  They contend NSP and Rochester informed them before Minot Telephone purchased NSP that they would continue receiving the same post-retirement health benefits from the company for the remainder of their lives.  As a result, the Bensons contend they chose to retire early to obtain the same post-retirement health benefits that NSP provided at that time.  Relying on an unsigned and unsworn “ANDERSON Memo to File” claiming that on September 22, 2009, Ernie Selland allegedly made an oral statement that “there is no doubt in [my] mind whatsoever that the agreement was that the retirees would have the same benefits they had under the labor contract, for life,” the Bensons argue their action is based on separate contractual agreements created the day each of them retired and therefore federal law does not apply.  
See
 Appendix of Appellants at 209.  Selland had been the principal manager of NSP in 1990.  The record contains no competent, admissible evidence to support the Bensons’ assertion of fact.  
See
 
Klimple v. Bahl
, 2007 ND 13, ¶ 4, 727 N.W.2d 256 (“The party resisting a motion for summary judgment must present competent admissible evidence which raises an issue of material fact.”).

[¶10] SRT Communications responds that the Bensons’ claims are based upon the 1991 collective bargaining agreement between NSP and Bensons’ labor union, not upon a separate contractual agreement.  SRT Communications contends federal law preempts the Bensons’ claims.

[¶11] Collective bargaining agreements are subject to the LMRA.  29 U.S.C. § 185 (2008).  “[A] collective-bargaining agreement is much more than traditional common law employment terminable at will.  Rather, it is an agreement creating relationships and interests under the federal common law of labor policy.”  
Bowen v. United States Postal Serv.
, 459 U.S. 212, 220 (1983).  The LMRA “pre-empts any ‘state-law claim [whose resolution] is substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract.’”  
Pilot Life Ins. v. Dedeaux
, 481 U.S. 41, 55 (1987).  Because the Bensons’ claim emanates from the 1991 collective bargaining agreement, we consider the claim within the framework of federal law under the authority of the LMRA, or in the case of an ERISA plan, under the authority of ERISA.  
See
 
Textile Workers Union v. Lincoln Mills
, 353 U.S. 448, 454-57 (1957); 
Pilot Life Ins.
, 481 U.S. at 55-56.

[¶12] Two categories of ERISA employee benefit plans are welfare plans and pension plans.  29 U.S.C. §§ 1002(1)-(2) (2008).  SRT Communications argues the Bensons’ plan is a welfare plan.  Welfare plans typically provide employees health, life, and dental insurance benefits, whereas pension plans provide retirement income.  
Id.
  Pension plans are subject to mandatory vesting rules, but welfare plans are not.  29 U.S.C. §§ 1051, 1053 (2008); 
see
 
Curtiss-Wright Corp. v. Schoonejongen
, 514 U.S. 73, 78 (1995); 
Anderson v. Alpha Portland Indus., Inc.
, 836 F.2d 1512, 1516 (8th Cir. 1988).  As a result, under ERISA, employers are generally free to adopt, modify, or terminate welfare plans.  
Curtiss-Wright Corp.
, 514 U.S. at 78.  “The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.  To this end, ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be ‘exclusively a federal concern.’”  
Aetna Health Inc. v. Davila
, 542 U.S. 200, 208 (2004) (quoting 
Alessi v. Raybestos-Manhattan, Inc.
, 451 U.S. 504, 523 (1981)).

[¶13] SRT Communications admits it assumed the 1991 collective bargaining agreement when its predecessor, Rochester, through Minot Telephone, purchased the telephone company from NSP, but argues the 1991 collective bargaining agreement did not create a lifetime right to post-retirement health benefits for the Bensons.  Instead, SRT Communications argues any rights the Bensons may have had as employees under the 1991 collective bargaining agreement expired on December 31, 1993, under the specific terms of the agreement.  SRT Communications further argues it provided post-retirement health benefits to the Bensons after December 31, 1993, as a matter of business discretion and not because of a contractual obligation.

[¶14] The district court concluded the Bensons’ claim to lifetime health benefits was “a state law cause of action that duplicates the ERISA civil enforcement remedy.”  “[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.”  
Aetna Health Inc.
, 542 U.S. at 209.  The district court also distinguished the vesting requirement of pension plans and the non-vesting requirement of welfare plans.  The court explained that SRT Communications’ obligation to continue providing post-retirement health benefits could be extended beyond the expiration of the 1991 collective bargaining agreement if the Bensons could prove both parties intended for the welfare plan to vest.  The district court looked to the language of the agreement to determine whether SRT Communications relinquished its right to unilaterally terminate the post-retirement health benefits at the expiration of the agreement and provide for lifetime vesting.  The district court concluded SRT Communications did not relinquish its right, because the language of the agreement unambiguously stated the expiration date was December 31, 1993, and the agreement did not provide for vesting of the post-

retirement health benefits.

[¶15] When interpreting a contract, or in this case a collective bargaining agreement, a court “must begin by examining the language of the documents which form the basis of the agreement.”  
Anderson
, 836 F.2d at 1517.  Only when a contract is ambiguous may a party introduce extrinsic evidence to aid in construing the contract.  
Id.

[¶16] The language of the 1991 collective bargaining agreement between NSP and the Bensons’ labor union provided, “As a result of the negotiations between the Local Union and the Company there is in existence Medical Expense Benefit Plan amended effective January 1, 1991, remaining in effect to December 31, 1993.”  “[A]n expired contract has by its own terms released all parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied.”  
Litton Fin. Printing Div., a Div. of Litton Business Sys., Inc. v. National Labor Relations Board
, 501 U.S. 190, 206 (1991).  “It would render the durational clauses nugatory to hold that benefits continue for life even though the agreement which provides the benefits expires on a certain date.”  
Anderson
, 836 F.2d at 1519.  The plain language of the agreement stated it expired on December 31, 1993, and did not include language for vesting of the post-retirement health benefits.  Because the 1991 collective bargaining agreement did not specifically provide for vesting of the post-retirement health benefits, SRT Communications had no obligation to continue providing benefits to the Bensons after the expiration of the agreement.

[¶17] Although the Bensons argue their action is based upon a separate contractual agreement governed under state law, their argument ignores the preemptive effect of the LMRA and ERISA.  
See
 
Aetna Health Inc.
, 542 U.S. at 209.

[I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls “within the scope of” ERISA.

Id.
 at 210 (quoting 
Metropolitan Life Ins. Co. v. Taylor
, 481 U.S. 58, 66 (1987)).

[¶18] The Bensons not only failed to produce evidence of a separate contractual agreement between themselves and SRT Communications, but their complaint specifically alleged, “SRT Communications should be required to continue paying for the Plaintiffs [sic] medical and health benefits in accordance with the Labor Agreement between NSP and the local labor union.”  Their complaint unambiguously asserted claims based upon the 1991 collective bargaining agreement between NSP and their labor union.  When a state law claim is “substantially dependent” on the terms of a collective bargaining agreement, the ordinary state law claim is “pre-

empted by federal labor-contract law.”  
Allis-Chalmers Corp. v. Lueck
, 471 U.S. 202, 220 (1985).  We conclude Bensons’ claim for post-retirement health benefits is an ERISA claim governed by federal law because it seeks redress for the termination of the benefits allegedly owed to them by SRT Communications under the 1991 collective bargaining agreement.

 

B

[¶19] The Bensons argue SRT Communications purchased all of the telephone business’s liabilities when its predecessor, Rochester, through Minot Telephone, purchased the assets from NSP in 1991, including the liability to provide post-

retirement health benefits to its retirees.  Relying on the deposition testimony of Steve Lysne, SRT Communications’ chief executive officer and general manager, stating, “As the accountant . . . all I really did on this matter would be calculate the liability that the company would have for post retirement health benefits,” the Bensons contend SRT Communications considered as liabilities its coverage of post-retirement health benefits for its retirees.

[¶20] “The long-established general rule is that a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation.”  
Downtowner, Inc. v. Acrometal Products, Inc.
, 347 N.W.2d 118, 121 (N.D. 1984).  There are, however, four well-recognized exceptions:

1. Where there is an express or implied agreement to assume the transferor’s liabilities;

2. Where the transaction amounts to a consolidation or merger of the two corporations;

3. Where the transferee corporation is merely a continuation of the transferor corporation; or

4. The transaction is an attempt to defraud the creditors of the corporation.

Id.

[¶21] Under the Bensons’ theory, one of the four exceptions to the general rule must apply for their claim to have merit.  The Bensons make no claim that exceptions two, three, or four apply here.  Under the first exception, we consider whether Rochester expressly or implicitly agreed with NSP to assume NSP’s alleged liability to provide post-retirement health benefits to the Bensons under the NSP-Rochester asset purchase agreement.

[¶22] The district court said the Bensons provided little, if any, legal support for their contention that a corporation assumes all liabilities when it purchases the assets of another corporation.  In fact, the Bensons’ contention is contrary to the general rule articulated in 
Downtowner, Inc.
, 347 N.W.2d at 121.  The district court concluded the language of the NSP-Rochester asset purchase agreement pertaining to the Bensons’ claims, specifically paragraphs 6, 9, and 24, listed as liabilities only the health and medical benefits under the 1991 collective bargaining agreement.  The district court concluded the NSP-Rochester asset purchase agreement did not include a reference to any of the separate contractual agreements alleged by the Bensons.  The court therefore concluded Rochester assumed only the liabilities expressly provided in the NSP-Rochester asset purchase agreement and did not assume any alleged liabilities associated with a separate contractual agreement.  The court concluded the Bensons did not provide any evidence of the existence of a separate contractual agreement between themselves and Minot Telephone, which allegedly was created the day they retired and would provide for post-retirement health benefits throughout their retirement.

[¶23] The record and the NSP-Rochester asset purchase agreement support the district court’s conclusion.  Paragraph 9(h) of the NSP-Rochester asset purchase agreement specifies “Schedule 9(h)” as the only employee benefit plan liability NSP transferred to Rochester.  Schedule 9(h) includes an NSP medical expense plan, a retiree survivor benefit plan, and a group dental program.  Paragraph 24 of the NSP-

Rochester asset purchase agreement, however, requires Rochester to assume “all of the rights, benefits, interests, liabilities and obligations (including, without limitation, any statutory liabilities and obligations)” of NSP under the collective bargaining agreement dated August 1, 1946, and effective from January 1, 1989 to December 31, 1990.  Under that language, Rochester assumed liabilities under a collective bargaining agreement that expired before the execution of the 1991 collective bargaining agreement at issue here.  Furthermore, the NSP-Rochester asset purchase agreement does not refer to any separate contractual agreement obligating NSP or Rochester to provide post-retirement health benefits to the Bensons.

[¶24] Paragraph 6 of the NSP-Rochester asset purchase agreement, governing the “Assumption of Liabilities,” includes language addressing the Bensons’ claim, and provides:

Except as set forth in this paragraph 6 or Schedule 6 hereto, Seller shall transfer the Real Estate and Assets to Purchaser on the Date of Closing free and clear of all liens and encumbrances, and 
Purchaser shall not, by virtue of its purchase of the Real Estate and Assets, assume or become responsible for any debts, liabilities or obligations of Seller
.  Notwithstanding the foregoing, Purchaser covenants and agrees that on the Date of Closing, it shall execute and deliver to Seller an Assumption Agreement in substantially the form of Exhibit A hereto pursuant to which it will assume and agree to perform and discharge the following debts, liabilities and obligations:

a. 
All debts, liabilities and obligations arising under the Operating Contracts
 which accrue and become performable on and after the Date of Closing; 

b. 
All debts, liabilities and obligations identified in Schedule 6 hereto
; and 

c. All liabilities of Seller to its employees who perform services for the Business and who are employed by Purchaser on and after the Date of Closing 
for vacation pay accrued
 as of the Date of Closing.

(Emphasis added.)  Under paragraph 6 of the NSP-Rochester asset purchase agreement, Rochester assumed only the debts, liabilities, or obligations listed in subparagraphs (a)-(c), which did not include post-retirement health benefits to its retirees.  Subparagraphs (a) and (c) reference “operating contracts” and accrued “vacation pay,” respectively, which do not obligate Rochester to provide the Bensons with post-retirement health benefits.  Also, subparagraph (b) references “Schedule 6,” which lists “None” as liabilities to be assumed by the “Purchaser.”  Like paragraphs 9 and 24, paragraph 6 of the NSP-Rochester asset purchase agreement does not support the Bensons’ claim that SRT Communications purchased all of the telephone business’s liabilities when it purchased the assets from NSP under the NSP-Rochester asset purchase agreement.

[¶25] The “general rule is that a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation,” unless an exception to the rule applies.  
Downtowner, Inc.
, 347 N.W.2d at 121.  Here the clear language of the NSP-Rochester asset purchase agreement did not require Rochester to assume any debts, liabilities, or obligations relating to post-retirement health benefits of the telephone business’s retirees, and the Bensons have not provided any evidence to raise a factual dispute that a separate contractual agreement exists between them and Minot Telephone, allegedly created the day they retired.  We therefore conclude the Bensons failed to raise a factual issue establishing they were entitled to recover from SRT Communications under an exception to the general rule that a purchasing corporation does not succeed to the liabilities of a selling corporation.

 

C

[¶26] The Bensons argue SRT Communications must continue providing them post-

retirement health benefits because they detrimentally relied on SRT Communications’ coverage of the benefits for over fourteen years.  The Bensons attached to their complaint their documents and communications with SRT Communications and with its predecessors from 1990 to the present.  They argue these exhibits, along with SRT Communications’ continued payment of the benefits, demonstrate SRT Communications knew it had an obligation to provide post-retirement health benefits to the Bensons.  The Bensons’ “detrimental reliance” claim raises an issue about equitable estoppel.

[¶27] The doctrine of equitable estoppel is codified at N.D.C.C. § 31-11-06, providing:

When a party, by that party’s own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

To establish equitable estoppel, a plaintiff must show, on the part of the defendant:

(1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the [defendant] subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the [plaintiff]; and (3) knowledge, actual or constructive, of the real facts.

Farmers Coop. Ass’n of Churchs Ferry v. Cole
, 239 N.W.2d 808, 813 (N.D. 1976).  The plaintiff must also show, on her own part:

(1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the [defendant]; and (3) action or inaction based thereon, of such a character as to change the position or status of the [plaintiff], to his injury, detriment, or prejudice.

Id.

[¶28] The Bensons argue SRT Communications has provided their health benefits for more than fourteen years after their retirement dates, and as a result, they relied to their detriment on SRT Communications’ actions.  They contend that even if SRT Communications provided the post-retirement health benefits “out of the goodness of its heart,” as argued by SRT Communications, SRT Communications’ predecessor still should have informed them on their retirement dates that it had no obligation to continue paying the health benefits to them.  The Bensons argue if they had been informed, they could have purchased health and other medical benefit plans at a cheaper rate fourteen years ago before their health had deteriorated, causing them now to pay higher insurance premiums because of pre-existing medical conditions.

[¶29] The district court concluded federal law preempted the Bensons’ equitable estoppel claim.  The court also concluded the claim failed under North Dakota law because the Bensons’ mere reliance on SRT Communications’ coverage of the post-

retirement health benefits did not satisfy the requirements of an equitable estoppel claim.  The district court said the Bensons did not show SRT Communications falsely represented or concealed any material facts, and as a result, the claim had no merit.

[¶30] We conclude the Bensons’ state law equitable estoppel claim is preempted by federal law.  “[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.”  
Aetna Health Inc.
, 542 U.S. at 209.  Federal law permits SRT Communications to terminate its health or other medical benefit plans under ERISA at any time after the expiration of the collective bargaining agreement governing the benefit plans.  
See
 
Curtiss-

Wright Corp.
, 514 U.S. at 78.  Therefore, SRT Communications lawfully terminated its coverage of post-retirement health benefits to the Bensons, even after providing them benefits for over fourteen years after they first retired.

[¶31] Even if we conclude the claim is not governed by federal law, the Bensons have not established a factual dispute on a state law claim.  Although the Bensons may have relied on SRT Communications’ continued coverage of their post-

retirement health benefits, the Bensons presented no disputed facts to show SRT Communications falsely represented its conduct to, or concealed material facts from, the Bensons.  Besides unsupported accusations, the Bensons did not provide any evidence showing SRT Communications falsely represented its conduct or intentionally concealed material facts.  
See
 
Mr. G’s Turtle Mountain Lodge, Inc. v. Roland Tp.
, 2002 ND 140, ¶ 23, 651 N.W.2d 625 (“When no pertinent evidence on an essential element is presented to the trial court in resistance to a motion for summary judgment, it is presumed no such evidence exists.”).  Although SRT Communications’ decision to terminate coverage for retirees once they reached the age of Medicare eligibility may be unpopular with the retirees, SRT Communications could have adopted, modified, or terminated its benefit plan at any time after the expiration of the 1991 collective bargaining agreement under federal law.  
See
 
Curtiss-Wright Corp.
, 514 U.S. at 78.  Because the Bensons are unable to prove every element of their estoppel claim, it is without merit.  
See
 
St. John Public School Dist. No. 3 v. Engineers-Architects, P.C.
, 414 N.W.2d 285, 286 (N.D. 1987) (“[T]he burden of proving each element of an estoppel is on the party asserting it.”).

[¶32] After reviewing the record in the light most favorable to the party opposing summary judgment, the Bensons, we conclude their claims are preempted by federal law and are without merit under North Dakota law.  Under ERISA, SRT Communications is free to adopt, modify, or terminate its welfare plan.  
See
 
Curtiss-

Wright Corp.
, 514 U.S. at 78.

[¶33] Finally, we acknowledge the Bensons’ argument that the 1991 collective bargaining agreement does not apply to Don and Annette Feist because Don did not belong to Local Union No. 949 when NSP and the labor union entered into the 1991 agreement.  Under their argument, the Bensons assert the Feists’ state law claims are not subject to federal preemption because the claims arise from a separate contractual agreement between Minot Telephone and Don Feist, which was created the day he retired, and not from the 1991 collective bargaining agreement.  Therefore, the Bensons imply, the Feists’ claims are not governed by federal law.

[¶34] The Bensons correctly contend the Feists’ claims are not preempted by federal law, because they do not arise under a collective bargaining agreement.  
See, e.g.
, 
Bowen
, 459 U.S. at 220 (collective bargaining agreements create “relationships and interests under the federal common law of labor policy” and are “much more than traditional common law employment terminable at will”).  Like the Bensons, the Feists are unable to prove the existence of a separate contractual agreement upon which the claims are based.  We are unable to review a contractual agreement that is not in the record.  
See
 
Flex Credit, Inc. v. Winkowitsch
, 428 N.W.2d 236, 239 (N.D. 1988) (“[E]vidence which does not appear in the record of the trial court proceedings cannot be considered by this court on appeal.”).  We therefore conclude the Feists’ claims are also without merit.

III

[¶35] We affirm the district court’s judgment.

[¶36] Dale V. Sandstrom

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

I concur in the result.

Daniel J. Crothers